POMASKI *v.* GRANT.

1. NEGLIGENCE—PAVING CONTRACTORS—BARRIERS—EVIDENCE.

In an action against a paving contractor to recover damages for injuries sustained by one struck by a plank or barrier while he was riding on the running-board of a street car, testimony that the street was torn up between the track and curb is sufficient to take the case to the jury on the question whether the obstruction causing the injury was placed in position by the contractor, whose duty it was under the contract to erect barriers.

2. SAME—STREET CARS—RIDING ON RUNNING-BOARD.

A passenger is not negligent in riding on the running-board of a street car, where the car is so crowded that he cannot get inside.

3. WITNESSES—INTEREST.

A witness' interest was sufficiently shown where it was made to appear that he attempted to obtain a settlement for plaintiff's injuries, and the terms of the proposed settlement, offered for the same purpose, were properly excluded.

Error to Wayne; Frazer, J. Submitted January 5, 1899. Decided April 18, 1899.

Case by Stanislaus Pomaski against James Grant for
personal injuries. From a judgment for plaintiff, de-
fendant brings error.    Affirmed.

*James D. May*, for appellant.

*George X. M. Collier*, for appellee.

MONTGOMERY, J.   This is an action for negligent in-
jury.   The defendant had a contract with the city of
Detroit for the paving of Miami avenue.   The contract
provided that the defendant should erect and maintain a
good and sufficient fence or railing around any and all
excavations necessary for said work in such manner as to
prevent accident.   On the morning of the 11th of Sep-
tember, 1895, the plaintiff was riding on the side platform
of a street car on Miami avenue, and while in this posi-
tion was struck by a board projecting so near to the car
as to come in contact with his leg, and cause the injuries
complained of.   The testimony on the part of the plaintiff
tended to show that this occurred at a point between Wil-
cox street and Gratiot avenue, and that the board which
struck the plaintiff was apparently a barrier which had
been erected to warn the public against danger of travel-
ing the street, and that it had been placed so near to the
track.as to make it dangerous to those riding on the street
cars.   The defendant offered testimony to show that he
commenced work under his contract on the morning of
the 10th of September, at the end of Miami avenue, by
tearing up the old block pavement preparatory to repav-
ing; that this work was confined to that portion of Miami
avenue between Witherell street and John R. street,
which is a block west of Wilcox street, so that the opera-
tions of defendant were more than a block away from the
place of the injury; that no barriers were erected at this
point when the work was suspended on the night of the
10th of September.   It is strenuously insisted that there
was no testimony in the case which contradicted this evi-
dence of the defense, and that there was nothing to con-

nect the defendant with the cause of the plaintiff's injury.

The circuit judge was of the opinion that, in view of the fact that the defendant was conceded to be the contractor for repaving the street, and that it was his duty to cause barriers to be erected wherever the street had been torn up by him, there was enough testimony to carry the case to the jury, and it was competent for the jury to determine whether the defendant's witnesses were mistaken in their testimony as to the state of the work at the time in question. We think this view is correct, if there be found any testimony tending to show that the defendant's operations had extended to the place of the injury, for, if this appears, it follows that the defendant's theory is disproven in its main feature. As before stated, the defendant's testimony was positive that no work had at this time been done by him east of John R. street. The defendant's counsel also makes the claim that the evidence shows that the paving blocks had been torn up on either side of the track for a distance from 16 to 18 inches by the street-railway company, and that the blocks thrown out, and the boards upon which they rested, were left alongside the track, and that the testimony of the plaintiff's witnesses as to the condition of the street at this point is consistent with the theory that these blocks and boards were the only ones which could have caused the injury. The first witness for the plaintiff was Samuel Finkelstein, who testified on this subject:

"The street was torn up.
"*Q.* What struck him?
"*A.* A board that was blocking the street. The plank was standing that way, and there was a board right across it."

And on cross-examination the witness testified:

"I could not say that the pavement was torn up on both sides of the track. I could only see on this side of the track where I was riding, or between the car and the side of the street. The pavement was torn up the whole way."

Plaintiff testified:

"Two planks struck me. They were standing like a horse. They were standing right by the car. It hit me on the leg, and knocked me off."

And on cross-examination:

"*Q.* What was it the thing looked like that struck you?

"*A.* There was a cross and a plank there like that (illustrating).

"*Q.* You didn't see it before it struck you?

"*A.* No; if I had seen it before, I would have jumped off.

"*Q.* When did you see it?

"*A.* I saw it from far up. I saw a lot of them standing there.

"*Q.* When did you see the thing that struck you?

"*A.* I didn't see that one.

"*Q.* You didn't see the one that struck you?

"*A.* I saw that, too.

"*Q.* When did you see the other end, down near the curb?

"*A.* When I was a block away. I did not know how close the other end was to the car. I don't know whether it was a block. I could not say how far it was.

"*Q.* You said it was a block away. Do you mean that?

"*A.* I think so. I think it was a block away now. I saw the board coming through. I saw the one end because there was a man standing in front of me, and I could not see this end, but I could see it a block away.

"*Q.* Did you see any piece connecting the one on the curbstone with the end near the car track?

"*A.* Yes, sir; it was a plank.

"*Q.* You saw the plank and this cross-piece near the curbstone a block away?

"*A.* Yes, sir; a block away."·

Emma Elwart testified:

"*Q.* What was the condition of the street, where you saw him lying?

"*A.* The boards were lying around on the street.

"*Q.* How was it about the pavement,—the blocks?

"*A.* The blocks were torn up."

Helena Pomaski testified:

"*Q.* What was the condition of the street?

"*A*. The street was in bad condition. All the blocks were out.

"*Q*. Torn up?

"*A*. All the blocks were taken out, and they were in piles, and they were higher than the track."

We think this testimony is open to the construction that the street was torn up between the curb and the track, and are therefore of the opinion that the court did not err in refusing to withdraw the case from the jury.

Error is assigned on an instruction to the jury that it was not negligence for the plaintiff to ride on the running-board of this car. We think, in view of the testimony in the case, there was no error in this. The plaintiff testified that the car was full, and that he could not get inside, and this testimony was not disputed.

On cross-examination of the witness Finkelstein he testified that he went to the railway company to see them about a settlement for the plaintiff's injuries. He was then asked, "Did you tell them how much you would settle for?" and the question was, on objection, ruled out. The purpose was stated to show the interest of the witness. The court, in ruling on the subject, stated: "The fact that he went there shows his interest. The details of that would not be of any consequence in this case." We think this ruling was right.

The other questions raised are necessarily ruled by what has already been stated.

The judgment is affirmed.

The other Justices concurred.