the course of the very case mentioned above, both before and since the decision relied upon by the respondent, might become a serious nuisance, and subject the owner of the premises to expensive litigation, involving claims for damages exceeding the entire value of his property. By making such an alteration himself, McMenamey would have incurred forfeiture of his lease and damages. He could put his lessee or licensee in no' better position than himself. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

=======

## GREEN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. June 30, 1899.)

1. STREET RAILROADS—NEGLIGENCE—QUESTION FOR JURY.
   Plaintiff was knocked down by a cable car, and, after being dragged some distance, was run over. The gripman, who was an inexperienced man, testified that the car was stopped almost as soon as plaintiff was struck. A number of the witnesses who saw the accident contradicted the gripman's statement that the gong was rung, and also testified that the car went about 75 feet after plaintiff was struck. An expert witness testified that the car could have been stopped within 25 feet. *Held,* that the question whether there was negligence in not stopping the car sooner should have been left to the jury.
2. SAME—EFFECT OF CONTRIBUTORY NEGLIGENCE.
   Although plaintiff was negligent in being struck by defendant's car, he may recover, if his injury was caused by defendant's subsequent negligence in failing to stop the car in time after he was struck.

Appeal from trial term, New York county.

Action by William Green by Edward J. Green, his guardian ad litem, against .the Metropolitan Street-Railway Company. From a judgment dismissing the complaint and an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Franklin Pierce, for appellant.
Charles F. Brown, for respondent.

O'BRIEN, J. The action was brought to recover for personal injuries sustained by the plaintiff, a boy between 12 and 13 years of age, while he was crossing from the east to the west side of Columbus avenue, between Eighty-Ninth and Ninetieth streets, on the night of December 11, 1897, at about 8 o'clock, which injuries, alleged to have been caused by the negligence of the defendant in the operation of one of its south-bound cars, resulted in the loss of the plaintiff's leg. Upon the trial at the close of plaintiff's case, a motion was made to dismiss the complaint, which was granted; and, to determine upon this appeal the correctness of the ruling made, a review of the testimony is necessary.

The plaintiff testified that he started to cross from the east to the west side of the avenue when he was about 25 feet south of the Ninetieth street crossing, and walked out as far as one of the elevated railroad posts, and stopped and looked up and down; that he saw a car with a light on it coming very fast downtown, then at the middle of the block above, and also saw a north-bound car a block and a half below; that he then continued his way walking across the street, looking downtown, the reason that he did not look up being that he thought he had plenty of time to get across ahead of the downtown car, but, if he had looked up, could have gotten out of the way; that the downtown car struck him just as he was stepping off the downtown track, and threw him, and the car caught him under the platform and dragged him, before running over him, about 100 feet; that he did not hear any bell; that he called out for help while he was being dragged along. Louise Schaubach said she was near a millinery store (25 feet from Ninetieth street, as shown by the map in evidence), and saw the boy walking across the street towards her, but did not see him stop at any time; that he was looking up and down to see if there was any car, and that there was a car midway between Ninety-First street and Ninetieth street coming down very fast, but there was no other car; that no signal was given, and the car within six or eight seconds struck the boy, dragged him, and then ran over him. Martin Hesserman, a clerk in a grocery store, testified that while at work he heard a cry, and turned around and the car had stopped; that the boy was picked up right in back of it, the car having gone entirely over him; that the car stopped just across from No. 607, which was 54 to 60 feet from Eighty-Ninth street. Carll Boney, a companion of the plaintiff, testified that he was standing on the northwest corner of Ninetieth street, and witnessed the accident; that he saw the boy crossing the track, and the car about one-half block above coming down; that, when near the first elevated pillar from Ninetieth street, the plaintiff looked up and saw the car coming from above, and then was looking down towards Eighty-Ninth street, and the car knocked him down and dragged him to opposite Schloss', No. 607, and the boy was calling for help till the car stopped; that he had gone as far as the west rail, and was struck by the left side of the bar underneath the platform in front of the wheels; that no bell was rung, and that it was a rainy, misty night. John E. Lynch testified that the car stopped at the second pillar from north of Eighty-Ninth street (50 feet north of Eighty-Ninth street, as shown on the map). G. H. Willis testified that he was on the corner of Eighty-Ninth street, and heard a shout, and the car had then stopped; that the car was north of the second post from Eighty-Ninth street. Edward Murray testified that on the night of the accident he was in his store, and heard shouting, and ran to the door, and the car had stopped near the second post from Eighty-Ninth street. Rose Riedmuller testified that the car stopped south of the second elevated pillar. Albert Shumway testified that he was standing on Columbus avenue at No. 606 (about 75 feet from Eighty-Ninth street), and heard shouting, each time getting nearer, and the car stopped just opposite to where he was. The gripman of the car, A. E. Miller, testified that he was going at the

speed of the cable, which he has since learned is from six to eight miles an hour; that about 50 feet south of Ninetieth street he passed another car going north, and just then the boy shot out from behind the north-bound car; that he was ringing his bell as he passed the car, and continued to do so when he saw the boy, and stopped the car as soon as possible; that the left side of the car struck the boy, but he was not dragged any distance, for the car stopped about 100 to 125 feet north of Eighty-Ninth street; that the block is about 200 feet long; that the boy lay about 8 feet in the rear of the car, which was 30 feet long; that it was a rainy night; that he had been on the road a month, and was working as an extra man, having spent 21 days learning.   Another gripman testified that a car such as the one in question, going at that rate and on such a night, could be stopped within 25 to 35 feet.   An engineer testified that it was 35 feet from the pillar pointed out to him by the plaintiff to the Ninetieth street crossing, and from that pillar to the middle of the block above 176 feet, and from the pillar to the point where it was stated the boy was picked up 99 feet.

Upon this evidence the appellant insists that there were two theories upon either of which the defendant's liability could be predicated,—the first being the negligence of the gripman in permitting the car to strike and throw the boy, and the second that, even if the plaintiff's own negligence exposed him to the risk of injury, the gripman, after he became aware of the plaintiff's danger, was under the legal obligation to use care in avoiding injury to him.   Were the first alone involved, we should be inclined to the view reached by the learned trial judge that the plaintiff could not recover for the reason that, apart from defendant's negligence, the boy's negligence contributed to bring about the accident.   Upon the other theory, however, as to whether the obligation which rested upon the defendant to use reasonable care to avoid injuring the boy when he was placed in a position of danger was discharged, we think there was a sufficient conflict of evidence to make it a question for the jury.   The car in question had no fender in front; but it was furnished with a fender under the platform, placed just before the front wheels, against or upon which the inference can fairly be drawn the boy rested for a period of time while being carried a distance which is variously estimated by the witnesses.   The question presented upon this appeal, which is dependent to a great extent upon the distance traversed by the car after the boy was struck, is whether the trial judge was right in holding, as matter of law, that the gripman discharged the obligation resting upon him towards the boy while in a position of danger.   If the gripman's testimony stood alone, there might be reason for answering this question affirmatively; but it is to be remembered that he was called for the purpose of testifying for the plaintiff as to the speed of the cable, and was on all other matters used as a witness for the defense, and the plaintiff was not therefore concluded by his testimony.   He stated that there was a north-bound car, in passing which he rung the bell, and that from behind the passing car the boy suddenly appeared, and was struck when about 50 feet south of Ninetieth street, and that his car was stopped 100 to 125 feet north of Eighty-Ninth street.   The blocks of the avenues are

200 feet in length, and the fair inference from this testimony is that the car stopped almost immediately after the boy was struck. His statements, however, as to the ringing of the bell, as to there being a north-bound car within the block, as to the point where the boy was struck, and the distance he was carried or dragged before the car was stopped, the gripman is contradicted, as already shown, by one or more witnesses. Their testimony tended to show that the car did not stop after striking the boy till it reached the second elevated post from Eighty-Ninth street,—a distance of 50 feet from Eighty-Ninth street. Some say it stopped at a point about 35 feet south of Ninetieth street. Although some of the witnesses, in describing how far the car went after striking the boy, give the distance as from 100 to 150 feet, and others testify that the car was stopped very soon after the cry for help was given by the boy, it does not necessarily follow that there is here an inconsistency, because it was also stated that the car had previously traversed a distance of 176 feet in but six or eight seconds. Again, if we take the testimony of those who say the car stopped at a distance of 75 feet from Eighty-Ninth street, and credit the gripman's statement that the boy was struck 50 feet south of Ninetieth street, it will be seen that the car must have gone 75 feet after it struck the boy, although, according to the testimony of a former railroad employé, who had experience as a gripman, the car, even on such a night and in the then condition of the tracks, could have been stopped within 25 to 35 feet. If this evidence was credible,—and that was for the jury to determine, in the absence of contradiction,—there was no sufficient explanation given why the car should have gone the distance testified to by the witnesses after striking the boy. The gripman of the car did not appear to have had much experience, having been in charge of a car but a week, and, according to his own statement, he was going with a free cable at the time of the accident, although he did not know how fast that was. We have stated enough to show that, if we give to the plaintiff, as we must, the benefit of the most favorable inferences to be drawn from the testimony, there was a prima facie case made out, which, in the absence of the defendant's testimony and without explanation, should have been submitted to the jury, and not determined as a matter of law. In this most favorable view of the evidence, we think that the appellant is right in his contention that the case falls within the principles laid down in the recently decided case of Weitzman v. Railroad Co., 33 App. Div. 585, 53 N. Y. Supp. 905, wherein the learned judge writing the opinion says:

"Whatever the degree of negligence on the part of the individual in the original contract, that negligence culminated in the accident which landed him in the net of the fender. From that moment a new relation existed between the parties, and any act or omission on the part of the defendant amounting to a lack of the care demanded by the situation, * * * and resulting in the death of plaintiff's intestate, is sufficient to charge the company with negligence. It is not to be understood that the defendant becomes an insurer of every person who is caught in its fender, but simply that it is bound to use that same degree of care which a reasonably careful and prudent man would or ought to use under the same circumstances; and this is always a question for the jury to pass upon. When the plaintiff's intestate reached a place upon the fender of defendant's car, the defendant had notice that the child was in

a dangerous position, and if it had time, and with the exercise of reasonable care could have prevented the injury or death of the child, it was its duty to do so, and a failure on its part was negligence which entitled the plaintiff to recover, and the question of whether the defendant did or did not discharge this duty should have been submitted to the jury. The rule of law is that, 'notwithstanding negligence upon the part of the person injured, he may recover, if the railway company, after such negligence occurred, could, by the exercise of ordinary care, have discovered it in time to have avoided inflicting the injury.' 7 Am. & Eng. Enc. Law (2d Ed.) 437."

We think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.