NIEBOER v. DETROIT ELECTRIC RAILWAY. [1]

STREET RAILWAYS—INJURY TO PASSENGER—CONTRIBUTORY NEGLI-
GENCE—RIDING ON BUMPER.

Plaintiff, while riding on the rear bumper of an electric car,
was struck by another car, and injured. In an action
against the company, he claimed that he rode where he did
because the car was crowded; but it appeared that he could
have taken another car two or three minutes later, in which
there was ample room. There was nothing to show any
custom authorizing him to ride on the bumper, and the conductor, on observing his position, told him he had better go
inside or wait for another car. *Held,* that plaintiff was
guilty of contributory negligence, and could not recover for
the injury. MOORE, J., and MONTGOMERY, C. J., dissenting;
being of opinion that the facts warranted the inference that
plaintiff occupied his position with the assent of the conductor.

Error to Wayne; Carpenter, J. Submitted June 4,
1901. Decided October 22, 1901.

Case by Peter H. Nieboer, by next friend, against the
Detroit Electric Railway, for personal injuries. From a
judgment for plaintiff, defendant brings error. Reversed.

Plaintiff, about 6 o'clock p. m., desired to take one of
the defendant's cars on the usual route to his home. Under the plea that the car was crowded, he climbed upon
the deadwood or "bumper" at the rear of the car. The

[1] Rehearing denied, but new trial granted, October 18, 1902.

deadwood is a block of wood 3 feet long at the longest part, beveled at the corners, about 6 inches wide, and at the outside is from 2 feet 4 to 2 feet 6·inches long. Two large bolts go through the deadwood, and are bolted to·a cast-iron drawhead in the center. A drawpin an inch thick goes through the deadwood into the drawhead. Above the head of the deadwood are the bolts with the nuts thereon, the head of the drawpin, the staple to which the drawpin is fastened, and the chain attached thereto. The slack of the chain is also on top of the deadwood. The car platforms are inclosed for a space about 3 feet high, with a railing on top. The car was evidently in a crowded condition. Whether plaintiff could have obtained standing room on the platform or inside of the car is not clear. There was room for the conductor to go through the car and collect fares.

Plaintiff testified that he was riding with both feet on the deadwood and both hands hold of the railing, and that it was necessary for him to thus ride to keep from falling off. Two others got on and stood upon the deadwood with him, plaintiff being in the center. Cars were running at intervals of from two to three minutes. The car on which plaintiff was riding had stopped. A rear car was approaching. The motorman, evidently not anticipating that the car in front would stop at that point, was unable to bring his car to a stop before it struck the one in front. The blow was not a severe one, and no one in either car was injured but the plaintiff. In some way his ankle was injured. He was unable to tell how. Either his foot must have been hanging over the deadwood, or he must have been standing with his foot at right angles with the deadwood, so that either his heel or his toes extended beyond it. Plaintiff testified that the conductor had not asked him for his fare. The conductor testified that he asked him for his fare, and that plaintiff replied that he would have to wait until he got his hands in his pockets. The conductor then said to him, "You better get around and get inside, or wait for another car," and

then went through the car to collect fares. The conductor did not collect his fare, but intended to return and collect it after he collected the fares of the other passengers. Before he returned, the accident happened. The case was submitted to the jury, who rendered a verdict for the plaintiff.

*Thomas T. Leete, Jr.*, for appellant.

*Ira A. Lieghley*, for appellee.

GRANT, J. (*after stating the facts*). Plaintiff was not invited to ride upon the deadwood. No custom was shown permitting him to ride there. The company had instructed its employés not to permit it. It was not intended or sanctioned for the use of passengers. It needs no argument to demonstrate that the position was a dangerous one, and never intended as a place for passengers to ride. The place was so dangerous that the plaintiff considered it necessary to hold on with both hands. According to his own theory, then, it was a place where it would be next to impossible for him to pay fare. There was danger in rounding curves, from sudden stoppage and starting, and from collisions both in front and from the rear, which are not of uncommon occurrence. The two passengers who were standing with plaintiff jumped from the car, which was then standing still, and escaped injury. Plaintiff testified that he did not have time to jump. There was neither an express nor implied assent for the plaintiff to ride in this dangerous position. The conductor advised him not to ride there, by telling him that he better get off and wait, or get inside. This language cannot be construed into an invitation. It was a busy time, when people were returning from their work and business to their homes. The conductor was not called upon to stop and put the plaintiff off. He had done all that was required in warning, if, indeed, he needed any warning. Plaintiff knew that, if the car was crowded, others were coming within two or three min-

utes, which he could have taken, and the testimony shows that there was room on the next car. Plaintiff voluntarily, and without invitation or permission, chose to ride in a dangerous place, rather than attempt to get inside or to wait a few minutes for another car. His negligent act was a continuing one, and directly contributed to the injury. When a place is one not provided or intended for passengers to ride upon, and is in itself dangerous, the employé who assumes to permit a passenger to ride in such a place acts without authority, unless such authority be shown expressly or by common custom. The case comes within the principle established by the following authorities: *Chamberlain* v. *Railroad Co.*, 11 Wis. 238; *Jackson* v. *Crilly*, 16 Colo. 103 (26 Pac. 331); *L. R. & Ft. S. Ry.* v. *Miles*, 40 Ark. 298 (48 Am. Rep. 10); *Carroll* v. *Transit Co.*, 107 Mo. 653 (17 S. W. 889); *Railroad Co.* v. *Jones*, 95 U. S. 439; *Bard* v. *Traction Co.*, 176 Pa. St. 97 (34 Atl. 953, 53 Am. St. Rep. 672). The last case is the parallel of this in its facts, except that the conductor in that case did not know that the plaintiff was standing upon the bumper. We have examined all the cases cited in support of the plaintiff's contention, and we think they are not applicable to this case.

Judgment reversed, and no new trial ordered.

HOOKER and LONG, JJ., concurred with GRANT, J.

MOORE, J. (*dissenting*). The plaintiff recovered a judgment of $2,000 against defendant for injuries received while he was riding on the deadwood of a car. The injuries were caused by a car following the one upon which plaintiff was riding running into him. The case is brought here by writ of error. The plaintiff, when hurt, was 20 years old. When he attempted to board a car, it was full of passengers. He, with two others, stepped upon the deadwood of the car, which was a piece of wood on the outside of the rear platform, from which it projected. It is a little over 6 inches wide, and nearly 3 feet long. It was put on the car to enable a coupling to be made with

another car. The drawbar runs into it, and a coupling pin drops through it into the drawbar. It would also serve as a bumper in case of a rear-end collision. It was separated from the rear platform by a railing a little more than 3 feet high, and was not intended for the use of passengers, though it was sometimes used by them when the car was crowded. After verdict, a motion was made to set aside the verdict. · Upon overruling the motion the trial judge filed a written opinion, which states so clearly the issues involved that we insert a part of it here:

"Plaintiff was injured while a passenger on one of defendant's cars. As the car was crowded, he and two others stood upon the deadwood outside the rear platform. While in this position he received an injury to his leg by a rear-end collision between the car upon which he stood and another car of defendant following it. He was the only passenger injured, and the inference is clear that, except for the position he occupied, he also would have escaped. The case was submitted to the jury, who found a verdict for the plaintiff. Defendant moves for a new trial on the ground that the court should have decided, as a matter of law, that plaintiff's contributory negligence precludes recovery.

"I think that the position of the defendant is unsound, for two reasons: *First*, I do not think it can be held, as a matter of law, that plaintiff was guilty of contributory negligence; *second*, plaintiff's negligence, if contributory, was not so connected with his injury as to bar recovery. We will discuss each of these questions separately:

"1. As a matter of law, was plaintiff guilty of contributory negligence? The evidence warrants, if it does not compel, the conclusion that the car was crowded. It warranted the inference that plaintiff occupied his position by consent of the conductor in charge of the car. That evidence consists of the conductor's own testimony. He testifies that he asked the plaintiff and the other two passengers who were with him on the projection to pay their fares. They replied that they were compelled to use their hands to maintain their position, and that therefore they could not then respond to his request. He then said, ' You had better get inside the car, or get off and wait for another car.' He then left them in this position, intending, as he said, to return later and collect the fares. It

was left to the jury to say whether this did not amount to a permission to remain where they were. The conductor manifested his willingness to take fare from the plaintiff and his companions. It was only because they could not pay that he advised them to seek another position. The fact that he did not attempt to enforce his advice, that he gave them no opportunity to get off the car, that he moved away, intending to return and collect the fares at a more opportune time, clearly warrants the inference, if it does not conclusively prove, that what was said was clearly not intended as an order, and that the conductor understood that his advice was rejected, and permitted plaintiff and his companions to continue in this position.

" In determining whether or not plaintiff was negligent, we are to look, not at dangers which no one could foresee, but at apparent dangers. Was the danger of injury in this position so obvious that a court should say, as a matter of law, that one occupying it was negligent? The obvious danger was this, and only this,—that of falling or being thrown from the car. The risk of this danger. was undoubtedly assumed by the plaintiff. This does not, however, prove that he was guilty of contributory negligence. If a person of ordinary prudence would have assumed this risk, then plaintiff in assuming it was not guilty of negligence. I do not think that it can be said, as a matter of law, that a person of ordinary prudence would not assume such a risk. All that was necessary to insure against that risk was a diligent use of one's hands and feet. If one could maintain a secure grip upon the bar in front of him, and keep his feet upon the platform underneath him, he is protected against this risk. One who has a right to confidence in his ability to use these members cannot, in my judgment, be held negligent in relying on that confidence. To such a one the contingency of danger is comparatively remote.

" 2. Assuming that plaintiff was, as a matter of law, guilty of negligence, I do not think that such negligence was so connected with his injury as to preclude recovery. The law by which it is determined whether or not the contributory negligence of the plaintiff bars recovery is very uncertain. The adjudicated cases are by no means harmonious, and there is an irreconcilable conflict between the principles announced by eminent judges and text-book writers. It has been stated that the plaintiff cannot recover if the injury complained of would not have occurred

without his negligence. It has also been stated that plaintiff's negligence will not bar his recovery if due care on the part of the defendant would have prevented the injury. If the first statement is correct, contributory negligence always prevents a recovery; if the second statement is correct, contributory negligence never prevents recovery. The truth is that the first statement can be correctly applied only in cases of simultaneous negligence, as in the case of an injury to a person while crossing a railway in consequence of his own and the railway company's negligence. The second statement can be correctly applied only in cases of successive negligence, as in the famous *Donkey Case*, of *Davies* v. *Mann*, 10 Mees. & W. 546, where defendant negligently ran into and injured the plaintiff's donkey, which plaintiff had negligently permitted to go unattended on the highway. The test almost universally approved is whether or not plaintiff's negligence is the proximate cause of his injury. If it is, he cannot recover; if it is not, he can. Even this test has been criticised on the ground that the term 'proximate' is misleading. I think this criticism just and important. The word 'proximate' is ordinarily used to indicate the relation between defendant's negligence and the plaintiff's injury. As so used, it has not the same meaning that it has when used to indicate the relation between plaintiff's negligence and plaintiff's injury. To illustrate, suppose in the case of *Davies* v. *Mann*, above referred to, that, as a result of the collision between the cart and the donkey, a third person had been injured; I think all will agree that the owner of the donkey, as well as the owner of the cart, would have been liable. See *Lynch* v. *Nurdin*, 1 Q. B. (N. S.) 29. And we have already seen that the negligence of the owner of the donkey was not so related to the collision as to preclude recovery in a suit by him against the owner of the cart. As used in relation to contributory negligence, the term 'proximate' simply means that in some way the relation between plaintiff's negligence and his injury is more remote than that between defendant's negligence and the injury. Let us inquire whether, in the case at bar, there was the same relation between plaintiff's negligence and his injury that there was between defendant's negligence and that injury.

"Plaintiff's negligence placed him in a certain position. While in that position he was injured, either through the negligence of the motorman on the car upon which he was

situated, or through the negligence of the motorman upon the car following.   Assuming, as we have a right to assume, that he occupied this position by the consent of the conductor in charge of the car, then a duty to be diligent in carrying him was imposed on defendant.   This duty was violated when plaintiff was injured in consequence of the negligence of one of defendant's motormen. This negligence directly caused plaintiff's injury.   Plaintiff, at the time of his injury, was inactive and powerless. His negligence, if he was negligent, simply placed him in a position of danger, when he was injured in consequence of defendant's violating a duty which it owed him in that position.   That negligence had no such relation to his injury as had the negligence of defendant.   Such negligence does not bar recovery.   In support of these views I refer to the following cases: *Jacobus* v. *Railway Co.*, 20 Minn. 125 (18 Am. Rep. 360); *Carroll* v. *Railroad Co.*, 1 Duer, 578; *Dunn* v. *Railway Co.*, 58 Me. 187 (4 Am. Rep. 269); *Keith* v. *Pinkham*, 43 Me. 501 (69 Am. Dec. 80).   The case of *Bard* v. *Traction Co.*, 176 Pa. St. 97 (34 Atl. 953, 53 Am. St. Rep. 672), cited by defendant's counsel, is much like the case at bar.   It differs, however, in this important particular:   The conductor did not consent to the plaintiff in that case remaining in the position he occupied.   Such circumstance, in my judgment, makes that case inapplicable to the facts under consideration here.   I do not think it profitable to discuss the other cases cited by defendant's counsel.   I think all of them distinguishable from the case at bar."

The principal question in the case is whether the court erred in not directing a verdict in favor of defendant.   It is insisted by counsel that, as a matter of law, the plaintiff was guilty of such contributory negligence that he is not entitled to recover; citing *Downey* v. *Hendrie*, 46 Mich. 501 (9 N. W. 828, 41 Am. Rep. 177); *Glover* v. *Scotten*, 82 Mich. 369 (46 N. W. 936); *Bard* v. *Traction Co.*, 176 Pa. St. 98 (34 Atl. 953, 53 Am. St. Rep. 672); and some other cases.   If there had been room in the car for plaintiff, or if, when the conductor saw him in the place of danger, he had peremptorily ordered him away from it, we think the position of counsel would be well taken; but the authorities are numerous that a very differ-

ent rule applies where the car is crowded, and for that reason the place of apparent danger is occupied by the passenger with the assent of the person in charge of the car. In addition to the authorities cited by the learned judge, see *Seymour* v. *Railway Co.*, 114 Mo. 266 (21 S. W. 739); *L. R. & Ft. S. Ry.* v. *Miles*, 40 Ark. 298 (48 Am. Rep. 10); *Watson* v. *Railway Co.*, 91 Me. 584 (40 Atl. 699, 44 L. R. A. 157, 64 Am. St. Rep. 268); *Lake Shore, etc., R. Co.* v. *Brown*, 123 Ill. 162 (14 N. E. 197, 5 Am. St. Rep. 510); *Pickett* v. *Railroad Co.*, 117 N. C. 616 (23 S. E. 264, 30 L. R. A. 257, 53 Am. St. Rep. 611); *Green* v. *Railway Co.*, 58 N. Y. Supp. 1039; *Metropolitan R. Co.* v. *Snashall*, 3 App. D. C. 420; *Davies* v. *Railway Co.*, 67 Mo. App. 598; *Sweeney* v. *Railway Co.*, 150 Mo. 385 (51 S. W. 682); *West Chicago St. R. Co.* v. *Johnson*, 180 Ill. 285 (54 N. E. 334); *Pomaski* v. *Grant*, 119 Mich. 675 (78 N. W. 891); *Lynn* v. *Southern Pac. Co.*, 24 L. R. A. 710, and the many cases cited in the notes; s. c. 103 Cal. 7 (36 Pac. 1018); *Sweetland* v. *Railroad Co.*, 177 Mass. 574 (59 N. E. 443, 51 L. R. A. 783); *Transit Co.* v. *Venable*, 105 Tenn. 460 (58 S. W. 861, 51 L. R. A. 886). If the street-railway company allows its cars to be so overcrowded that passengers are compelled to ride upon the platforms, running-boards, and other places of greater danger than the seats inside the car would be, and this is done with the assent of the person in charge of the car, which assent is indicated by the collection of fares, or by such other methods as indicate assent, the company cannot claim that the passenger assumes all the risks incident to his situation. The company may not profit by allowing this to be done and by collecting fares, and at the same time claim immunity from the liabilities attaching to a carrier of passengers.

A number of assignments of error relate to the admission of testimony. Only one of them calls for consideration. The plaintiff was allowed to give testimony as to the amount of his earnings, and to the amount of bills incurred by him while in the hospital and in the employment

of doctors because of his injury. It is said plaintiff is a minor; that his parents are entitled to his wages; and under these circumstances it was error to admit this testimony,—citing *Baker* v. *Railroad Co.*, 91 Mich. 298 (51 N. W. 897, 16 L. R. A. 154, 30 Am. St. Rep. 471). Counsel for plaintiff says that the next friend of plaintiff in bringing this suit is his father, and that *Baker* v. *Railroad Co.*, instead of being an authority against plaintiff, is directly in point in his favor. The record does not disclose the relationship between the plaintiff and his next friend. When this testimony was first offered, it was objected to, and the objection was sustained. Then an amendment to the declaration was permitted. The question was then renewed, when it was objected to "as not within the declaration, incompetent, and immaterial." As a matter of fact it was within the amended declaration, and, under the declaration, was competent and material, if the proper foundation had been laid for its introduction. The plaintiff testified that he was earning six dollars a week; that he received his own earnings, and was to pay the bills of his doctor and at the hospital. Under these circumstances we do not think it was error to receive this testimony.

Judgment should be affirmed.

MONTGOMERY, C. J., concurred with MOORE, J.