MORGAN *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.[1]

1. APPEAL AND ERROR—QUESTIONS PRESENTED FOR REVIEW.

A question not raised in the lower court and not referred to in any assignment of error is not presented by the record on a writ of error, and will not be considered, though argued in the brief.

2. CARRIERS — PERSONAL INJURIES — PASSENGER ON PLATFORM — CONTRIBUTORY NEGLIGENCE.

Where all seats in a passenger train were occupied, and a passenger became faint because of the badly crowded condition and poor ventilation of the cars, and, as he could not get to a window to relieve his faintness, sought fresh air on the platform, he was not guilty of contributory negligence as a matter of law under 2 Comp. Laws, § 6303.[2] HOOKER and GRANT, JJ., dissenting.

3. SAME—PLEADING—CAUSE OF INJURY.

A declaration in such a case, alleging that, while plaintiff was standing at the car door holding on to the hand railing, he be-

[1] Rehearing denied May 12, 1905.
[2] As to duty of carrier permitting cars to become overcrowded, including liability for injury to persons riding on platform, see note to *Lynn* v. *Southern Pac. Co.*, (Cal.) 24 L. R. A. 710.

came unconscious by reason of the foul air, and fell from said train while the same was running at a high rate of speed, and struck with great force on the ground, is a sufficient averment that the speed of the train caused him to fall therefrom.

Error to Lenawee; Chester, J.   Submitted October 19, 1904.   (Docket No. 51.)   Decided December 30, 1904.

Case by Marion L. Morgan against the Lake Shore & Michigan Southern Railway Company for personal injuries.   There was judgment for plaintiff, and defendant brings error.   Affirmed.

*Weaver, Morgan & Priddy*, for appellant.

*Bird & Sampson*, for appellee.

MOORE, C. J.   The plaintiff recovered a judgment for injuries received by him while a passenger on defendant's road.   The case is brought here by writ of error.

There is scarcely any dispute about the facts.   Plaintiff resides near Woodstock station on the Ypsilanti Branch of the Lake Shore & Michigan Southern Railway.   The defendant advertised an excursion at reduced rates for the Hillsdale fair in 1901.   On the last day of the fair, plaintiff purchased a round-trip ticket to Hillsdale and return, good for that day only.   On the way to Hillsdale in the morning there were eleven coaches.   On the return trip there were only five coaches in the train, and plaintiff claims that all the seats were occupied, and people were standing in the aisles and upon the platforms; that he made his way up onto the rear platform of the fourth car, and when the train started he stepped into the rear end of the coach, and found standing room near the door; that the car in which he stood was badly crowded, men were smoking in the car, and it was hot, the ventilation was poor, and by the time the train had proceeded three or four miles he felt sick, and thought he would faint, and,

not being able to get near a window, he opened the door, and stepped out on the platform. Thinking that riding backwards might increase his sickness, he stepped across on the opposite platform, and turned his back to the end of the car, leaned against it, and held onto the hand rail. He stood in this position for a few moments, when he lost consciousness, and rolled down the steps and off onto the ground. He also claims the train was running upwards of 40 miles an hour.

The only question involved here is whether the plaintiff, as a matter of law, under all the circumstances, was guilty of contributory negligence in going out upon the platform to relieve his sickness. The plaintiff claims he was not. The defendant insists he was, and that a verdict should have been directed in its favor.

Before discussing this question it is proper that we should say that we are not at liberty on this record to consider the questions of defendant's negligence, and of whether that negligence was the proximate cause of plaintiff's injury. These questions were not raised in the lower court. The question of defendant's negligence is not raised in this court. The question of that negligence being the proximate cause of plaintiff's injury is raised in this court only in this way:

" In no view of this case can it be said that any alleged act of the defendant was the proximate cause of the accident to the plaintiff. The sole cause of the accident to plaintiff was his own act in leaving a place of safety within the coach and assuming a perilous position on the outside."

We are referred to no assignment of error to which this argument is applicable, and diligent search on our part has enabled us to find none. We therefore conclude, as heretofore stated, that this question is not presented by the record. In deciding this case we therefore assume that while plaintiff was on the platform he was injured in consequence of defendant's negligence—negligence which was the proximate cause of his injury.

The question then presented for our determination is whether, under the circumstances, plaintiff was negligent in leaving the car and going on the platform, so as to bar his recovery for an injury there received as a direct consequence of defendant's negligence. It must be confessed there is a want of uniformity in the decisions as to whether a person should be chargeable, as a matter of law, with contributory negligence, in going out upon the platform when no seat was furnished him in the car.

The New York court has held that in going upon the platform, where the company failed to furnish a passenger a seat, he was not, as a matter of law, chargeable with contributory negligence. *Willis* v. *Railroad Co.*, 34 N. Y. 670.

The Wisconsin court has held that where a passenger voluntarily goes upon a platform, where no seat is furnished him, it is a question for the jury to say whether he was guilty of contributory negligence. *Ward* v. *Railway Co.*, 102 Wis. 215.

The Minnesota court has held—and this holding has been followed by several other States—that where a passenger voluntarily goes out upon the platform, where no seat is provided for him, but there is standing room in the car, he is guilty of contributory negligence as a matter of law. *Rolette* v. *Railway Co.*, 91 Minn. 16.

It is the claim of defendant that the last case mentioned is sustained by the great weight of authority, and should control; citing many cases, and especially *Cleveland, etc., R. Co.* v. *Moneyhun*, 146 Ind. 147, which it is claimed is a parallel case to the one at bar. While the case resembles this one in many respects, it may be distinguished in some important particulars. It appears from the opinion in *Cleveland, etc., R. Co.* v. *Moneyhun*, supra, that the record does not disclose what made the plaintiff sick. It also appears " he was not content to stop on the platform, but went upon the lower step, and stood there with his back towards the platform and his head leaning outward." The court was of the opinion that the facts disclosed a

clear case of contributory negligence, and so held. In our view of the case we do not need to decide which of these lines of cases is sustained by the weight of authority. All of them recognize the rule that, if the passenger is necessarily on the platform because of conditions created by the railway company, he is not precluded from recovering damages.

Section 6303, 2 Comp. Laws, reads:

" In case any passenger on any such road shall be killed or injured while on the platform of a car or while in or on any baggage or freight car in violation of the printed regulations of the company posted up at the time, in a conspicuous place inside its passenger cars then in the train, such company shall not be liable for the injury, if the injury be occasioned by the person being improperly on such platform, or within such baggage or freight car, or after having been notified by the conductor or any other person having charge of any train that such person is not in the proper place: *Provided*, said company at the time furnished room and seats inside its passenger cars sufficient for the proper accommodation of its passengers."

This statute clearly recognizes, by inference at least, that conditions may arise where one would be entitled to recover, even though he was riding upon the platform. There was testimony in the case from which the jury might find, not only that the cars were so crowded that all the seats were occupied, but from which they might easily draw the inference that the passenger became faint because of the conditions existing as the result of negligence on the part of the defendant, and, as he could not get to a window to relieve his faintness, he sought what is usually an effective remedy, fresh air, at the only place he could find it. We do not think that it can be said, as a matter of law, that this was contributory negligence.

It is said:

" It was error for the court to charge the jury where the court states, 'and you find that plaintiff was thrown off the platform onto the ground and injured by reason of such sickness so caused, and by reason of the speed of the

train—that is, the high rate of speed of the train over this track—or the tipping of the platform on a curve in the track, then plaintiff would be entitled to recover.' And we submit there was no testimony that would justify this charge as to the high rate of speed as affecting plaintiff's falling from the train. Nor is there any allegation in the declaration that the speed of the train was in any manner the cause of plaintiff falling from the train."

The question of the high rate of speed being negligence was not raised. We think there was testimony of the high rate of speed. We also think the following aver- ment was sufficient:

"That while he was standing at said door, holding onto the hand railing on the end of the car, he became and was unconscious by reason of said foul and unwholesome air, and fell from said train while the same was running at a high rate of speed, and struck with great force on the ground."

Judgment is affirmed.

CARPENTER and MONTGOMERY, JJ., concurred with MOORE, C. J.

HOOKER, J. (*dissenting*). That one who disregards the rules of a railroad company so far as to voluntarily ride upon the platform of a passenger coach, in face of the well-known and generally recognized danger of so doing, assumes the attendant risks, is so well established by the authorities in this country that counsel do not appear to question the proposition. They say in their brief that "in the case at bar we are willing to admit that, if there was standing room in the car, plaintiff's standing upon the platform was prima facie negligence, and, if no circum- stances had been shown which overcame that presumption, then a verdict should have been directed by the trial judge." They claim that the rule does not apply because the circumstances show that their client did not so ride, but was there from necessity.

Two reasons are given for his going into a place of dan-

ger: (1) He found no vacant seat in the car. (2) The air was warm and vitiated from the breathing of the passengers, and he felt faintness and suffocation.

The rule of law is succinctly stated in 2 Wood on Railroads, § 308, to the effect that railroads are liable when the injured passenger is *compelled* to ride upon the platform, but not where he is unnecessarily riding there. The cases there cited support the rule. 4 Elliott on Railroads, § 1630.

It has been suggested in our consideration of this case that section 6303 of our Compiled Laws is a complete answer to the defendant's claim that the plaintiff was negligent in riding on the platform. It reads as follows:

"(6303) SEC. 2. In case any passenger on any such road shall be killed or injured while on the platform of a car, or while in or on any baggage or freight car in violation of the printed regulations of the company, posted up at the time in a conspicuous place inside its passenger cars then in the train, such company shall not be liable for the injury, if the injury be occasioned by the person being improperly on such platform or within such baggage or freight car, or after having been notified by the conductor or any other person having charge of any train, that such person is not in the proper place: *Provided*, said company at the time furnished room and seats inside its passenger cars sufficient for the proper accommodation of its passengers."

The case of *Willis* v. *Railroad Co.*, 34 N. Y. 675, is cited as an authority for a construction of this statute (which is similar to the New York statute), to the effect that under this statute, inasmuch as it provides that one injured while riding on a platform cannot recover, provided he could have found a seat in the car, the inverse of this must follow, i. e., that if he could not find a seat in the car he could go upon the platform at the risk of the company. We doubt if that case is authority for such a proposition, and, if it were, it should not, in our opinion, be followed. We have frequently shown the danger of extending statutes by indulging in such inferences, especi-

ally upon cases that have been discredited, as that case
has.   It cannot be said that we took that statute with the
construction placed upon it by that case, for it was a part
of our law long before that case was decided.   See 1
Comp. Laws 1857, § 1988.   Moreover, the concession
quoted from plaintiff's brief, and the failure to make such
claim, indicate that plaintiff's own counsel do not care to
contend for such a construction.   It is doubtful if the
railroad laws of any State in the Union fail to contain a
similar statute, and in few, if any, of them has it been
permitted to affect the general rule as to contributory
negligence above quoted.

Counsel's admission, then, relieves us from discussing
the proposition that the failure to find a seat absolved the
plaintiff from the ordinary consequences of voluntarily rid-
ing on the platform.   That fact created no necessity for
his doing so.   We have nothing left to consider but the
condition of the car.

It is not claimed that there was not standing room in
the coach, and the evidence shows that the plaintiff had
only a couple of miles or so to ride before the train would
reach a station, at which the crowded condition would be
measurably relieved, and he testified that he expected that
he could then get a seat, when he entered the car and
found all seats occupied.   The plaintiff stood near a door,
which was shut, according to his testimony.   He did not
make known his discomfort to the conductor who took up his
ticket, nor to the passengers, some of whom were his ac-
quaintances, and ask them to raise the windows.   He did
not open the door a few inches, and stand with his face to
the opening, or throw the door wide open; and thus ven-
tilate the car.   He was acquainted with the road, had
only six miles or thereabouts to go from Hillsdale to North
Adams, had gone four miles, expected a seat when two
miles more should have been traveled, but opened the
door and went out.   A fair statement is that he felt the
need of better air, and that he went into a place of danger
to get it, without any attempt to have the air in the car

changed, or to get relief in any other way, or to endure a few minutes longer, rather than to incur hazard to his life. Doubtless, circumstances might arise which would make it proper to leave a dangerous place for one less dangerous, but there is nothing to show that he was in danger of anything serious in the car, yet he jeopardized his life to escape a comparatively slight discomfort.

In *Quinn* v. *Railroad Co.*, 51 Ill. 495, the court said:

" This brief statement of the facts, about which there is no controversy, shows there is no ground whatever for maintaining this action. It was the negligence of the deceased, not that of the railway company, which caused his death. He was chargeable with extreme carelessness, and we cannot see on what grounds any material negligence can be attributed to the company. He had voluntarily taken a dangerous position which resulted in his death, and there is no reason why the company should be made to pay damages therefor. Admitting, however, as claimed by appellant's counsel, that the conductor should have advised the deceased to enter the car, at least while paying his fare, his failure to do so was as nothing when compared with the gross negligence of the deceased. The death of the unfortunate man can be attributed only to his own recklessness. It is urged, however, that this question should have been left to the jury. The practice adopted by the court cannot be safely followed in many cases. Whenever there is evidence tending to prove the issue, the plaintiff has a right to take the verdict of a jury. But if this had gone to the jury, and they had found for the plaintiff, the court should have set aside their verdict, or, if it had refused to do so, it would have been set aside by this court."

In *Camden, etc., R. Co.* v. *Hoosey*, 99 Pa. St. 492, the court said:

"Assuming for the present that the company was justly chargeable with negligence resulting in injury to the plaintiff, and that under the circumstances he was not guilty of contributory negligence in passing from car to car in search of a seat while the train was in rapid motion, can it be pretended that it would not be gross negligence in him to voluntarily take a position near the outer edge of the platform and remain there until, by an ordinary jolt

of the car, he lost his equilibrium and was thrown off?
* * * He was not only in a position of known danger,
but was there voluntarily and in disregard of the rules of
the company. There is nothing in the testimony from
which a jury would be justified in coming to any other
conclusion."

In *Worthington* v. *Railroad Co.*, 64 Vt. 107, the court
said:

"Negligence becomes a question of law when the facts
or circumstances are so decisive one way or the other as to
leave no reasonable doubt—no room for opposing infer-
ences. It is, as a matter of law, prima facie negligence
for a passenger to be riding on the platform or step of a
rapidly moving steam car. The fact that all the seats in
the car were occupied, and the aisles were so crowded that
the position of plaintiff was one of discomfort to himself,
and of evident discomfort and annoyance to others, does
not excuse him for voluntarily occupying a position on the
platform while the train was in motion. His claim is
that the passage where he stood after giving up his seat
was crowded, that most of those in the vicinity were
ladies, that the swaying and jolting of the car was one of
discomfort to himself and evident discomfort and annoy-
ance to others, and that in consequence of this he concluded
to go to the smoking car; that after taking his position on
the platform or step he thought he would stay there a few
minutes, and then go back into the car which he had left.
Thus it appears that the plaintiff had standing room in the
car, which he might have continued to occupy, but which he
chose to leave in order to free himself from discomfort and
annoyance, and that he remained on the platform or the
step in order to obtain temporary relief from that discom-
fort, intending in a short time to resume his former posi-
tion in the car, which he might have done. But passen-
gers, especially on excursion trains, must expect more or
less discomfort, and must endure it rather than assume
positions of danger and hazard not provided for their oc-
cupancy, for the purpose of avoiding danger. Necessity
alone can warrant the assumption of such positions."

The case of *Cleveland, etc., R. Co.* v. *Moneyhun*, 146
Ind. 147, is closely in point. It was held:

"A passenger [a minor 15 years old, and of average in-

telligence] is, as a matter of law, guilty of contributory negligence in going upon the lowest steps of the car to vomit while the train is in rapid motion, though there was only standing room in the car."

The plaintiff's intestate in that case became sick, so that he had to vomit, and went to the platform for that purpose.

In *Goodwin* v. *Railroad*, 84 Me. 211, the court said:

"The danger of standing on the narrow platform of a passenger car, while the car is moving with the usual speed of railroad trains, is most conspicuous. No prudent man, no man ordinarily mindful of his conduct and of matters about him, would occupy such a position. The greater the speed of the train, the more imminent the danger in such a place. Thoughtful people instinctively shudder when they see persons taking such risks. Curves are necessarily frequent on railroads in Maine, a fact well known to all, and a fact which makes the riding on the platform of a car most perilous. The knowingly incurring such an imminent, visible peril, the choosing to ride in such a conspicuously dangerous place, must be held by all reasonable people to be recklessness in a high degree. The danger, the chance of injury, is visibly imminent and great. No man of reason can fail to apprehend it. No prudent man would fail to avoid it. There seems to us no room for debate or question upon this proposition. * * *

"Viewing all the circumstances in every light suggested by the counsel, or imaginable by us, we see no escape from the conclusion that Goodwin's conduct was far below the standard of ordinary prudence, and that such lack of prudence directly caused his injury. Such being our opinion, we must for that reason render judgment accordingly, and set the verdict aside. We have examined every authority cited on both sides, but the above proposition seems to us so clear and simple, so consonant with reason, that we forbear to cite or explain other cases. The curious will find them cited and commented upon in the parallel case of *Worthington* v. *Railroad Co.*, 64 Vt. 107, published since the above opinion was written and concurred in."

The *Case of Worthington*, above cited, contains an elaborate discussion of the questions involved here. Con-

spicuous among them is the mooted question of taking a question of negligence away from the jury, and many cases are cited in support of that duty. We do not quote the case at length, for it can as well be read. The following, however, is so pertinent to the crucial point that we quote:

"But passengers, especially on excursion trains, must expect more or less discomfort, and must endure it, rather than assume positions of danger and hazard, not provided for their occupancy, for the purpose of avoiding it. Necessity alone can warrant the assumption of such positions. If they are assumed as matter of choice, and they contribute to injury, there can be no recovery. But what would constitute necessity in such cases it is not easy to say. It may, perhaps, be safely said, in a case like this, when nothing is said nor done by those in charge of the train to control nor influence the conduct of the passenger, that the attendant circumstances must be such as not to leave the passenger free to choose; such as to coerce his action and to compel him to assume the position as the best he could do at the time, acting as a careful and prudent man. The testimony in this case did not tend to show any such coercion of circumstances, any such compulsion; and therefore the case is that the plaintiff was riding as matter of choice, and not of necessity, in a dangerous place, not provided for the occupancy of passengers, which contributed to his injury; hence the court should have directed a verdict against him."

See, also, the recent case of *Rolette* v. *Railway Co.,* 91 Minn. 16. It was there said:

"It is undoubtedly the law, as settled in the best considered cases, that the mere fact that there are no seats in the cars does not justify a person in riding on the platform, for, so long as he can find standing room, by reasonable effort, on the inside of the cars, it is his duty to remain there; and also that, where it is unnecessary to stand or ride upon the platform, going there or standing there is such negligence as will prevent a recovery for personal injuries received; and, further, that while it is true that it was a duty incumbent upon the defendant to furnish a seat for the plaintiff, and not merely standing room in the aisle of the car, the mere fact that he was com-

pelled to accept standing room, especially on an excursion train, would not justify him in voluntarily leaving a place of safety, such as the inside of a coach, and going to one of peril—a platform, for instance. It is well known that passengers on excursion trains expect more or less discomfort and must endure it. They are carried at greatly reduced rates, and must anticipate crowded conditions of the coaches. If they assume dangerous places, it must be upon the ground of necessity alone. If such places are assumed as a matter of choice, and injury results, there can be no recovery."

The *Case of Willis*, 34 N. Y. 670, is referred to as follows:

"This case seems to have been tried, upon the part of the plaintiff's attorney, upon the theory supported by *Willis* v. *Railroad Co.*, 34 N. Y. 670, that the plaintiff was entitled to a seat, and, if none was furnished him, he was justified in going upon the platform. It is to be noticed that in the *Willis Case* the accident was caused by an obstruction upon the track, and that in several other cases cited by counsel the accident was caused either by a sudden lurch of the train or by a defective track; a crowded car having nothing to do with the resulting accident. Such cases are not in point, and we expressly decline to adopt the doctrine that, because a seat is not furnished a passenger, he may go into a place of well-known danger, and, if injured, recover damages. The best considered cases, in our judgment, are to the contrary. *Worthington* v. *Railway Co.*, 64 Vt. 107; *Camden, etc., R. Co.* v. *Hoosey*, 99 Pa. St. 492; *Fisher* v. *Railroad Co.*, 42 W. Va. 183; *Cleveland, etc., R. Co.* v. *Moneyhun*, 146 Ind. 147; *Louisville, etc., R. Co.* v. *Bisch*, 120 Ind. 549; 2 Wood on Railroads, § 308, and note; Beach, Contributory Negligence, § 149."

The case contains the following comment on the question of proximate cause which we have not felt called upon to decide:

"It seems to be well settled that, even though a passenger is compelled to stand upon the platform of a car by reason of his inability to find sitting or standing room inside, the mere fact that he is injured while so standing is not in itself a cause for action against a railway company,

for there must be some intervening act attributable to the latter and causing the injury, in order that the passenger can recover. If the accident is caused by the act of plaintiff himself, or by the act of another passenger, the act not being the natural consequence of the company's negligence, it is not liable."

The proposition that a man who experiences discomfort from the vitiated or overheated atmosphere of passenger trains may, because he feels nausea, go into a place of danger, against the rules of the company, and thereby make the company an insurer of his life, is so unjust that authorities ought not to be required to make it appear. That they are at variance therewith is, however, attested by the cases cited.

The judgment should be reversed, and no new trial ordered.

GRANT, J., concurred with HOOKER, J.