JANE GLOVER, ADMINISTRATRIX OF THE ESTATE OF GEORGE ARTHUR GLOVER, DECEASED, v. DANIEL SCOTTEN.

*Injury to railroad employé—Contributory negligence.*

1. It is contributory negligence on the part of a switchman to ride in a sitting position upon the beam of the pilot of a road-engine, with his feet hanging down over the cow-catcher.

2. The fact that upon switch-engines switchmen ride standing upon the platform provided for that purpose in front of the engine has no tendency to prove that they are justified in riding in a sitting position upon the cow-catcher of a road-engine.

Error to Wayne. (Hosmer, J.) Argued June 4 and 5, 1890. Decided October 10, 1890.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*John D. Conely* (*Conely, Maybury & Lucking,* of counsel), for appellant.

---

[1] A second trial resulted in a verdict for the plaintiff of nominal damages.

*Henry M. Cheever* and *W. R. Montgomery*, for plaintiff.

GRANT, J.   Plaintiff's decedent was a switchman in the employ of the Wabash, St. Louis & Pacific Railway Company.   The engine upon which he was employed ran into a truck owned by the defendant, and driven by his teamster, and resulted in the death of decedent.   Plaintiff brings suit against defendant, claiming that the accident was the result of the negligence of his employé, and that such negligence was to be imputed to the defendant.

A diagram showing the situation of the tracks and streets near which the accident occurred will be found on page 371.   Woodbridge street is north of the freight-depot and Union Depot elevator and the tracks of the railroad company.   The whole space represented upon the diagram is a part of the yard of the company.   The space marked "roadway," leading from the Union Depot elevator to Woodbridge street, is a private way belonging to the company, but was constructed for the accommodation and convenience of those patrons of the company who had business at the elevator.   All such, therefore, had the right to use it the same as if it were a public highway.   Teams which had been to the elevator or freight-depot had their choice of going east to Twelfth street, thence to Woodbridge street, or north, by this roadway.

There are two tracks on each side of the main track, near the place of the accident.   The regular switch-engine was laid off for repairs, and a regular road-engine was being used for switching.   The engine was going west on the main track to attend to some switching some distance beyond the roadway.   The switch crew consisted of foreman, engineer, fireman, and the deceased as switchman.   Tracks Nos. 4 and 5 were filled with freight-cars from a

point near the freight-depot up to near the crossing of the roadway, but space was left of sufficient width for teams to pass. Defendant's teamster had been to the freight-depot, loaded his truck, and was going south by this roadway, having reached it by the way indicated on the map by the dotted lines between tracks Nos. 5 and 6, and, when the team was fairly upon the crossing, it was struck by the engine, resulting in the killing of the deceased, injury to defendant's teamster, and the destruction of the team and truck. The deceased, at the time, was sitting on the beam of the pilot, which is next to the "cow-catcher," as it is called, with his feet hanging down over the cow-catcher. The deceased had no duty to perform while riding upon the engine. His duty consisted in attending to the switching of the tracks, getting on and off the engine for that purpose. The regular switch-engine has a step in front, upon which the switchmen stand when engaged in moving to and fro. This is for convenience and safety.

The litigation resulting from this accident is anomalous. Defendant's teamster sued the railroad company for injuries; the company was found negligent, and judgment recovered, which was paid. The railroad company paid defendant for the loss of his team. Plaintiff sued the railroad company in the Circuit Court of the United States for the Eastern District of Michigan, claiming that the death of deceased resulted from the negligence of the company in not ringing the bell, blowing the whistle, stationing a flagman at the crossing, and in obstructing the view of the track. Judge Brown, before whom the case was tried, directed a verdict for the defendant, upon the ground that the deceased was guilty of contributory negligence. Plaintiff then brought this suit.

Several questions are raised by the record, but the plaintiff's right to recover is barred by his decedent's con-

tributory negligence, rendering a determination of the other questions unnecessary. There is no dispute about the facts. The judge found as a fact, and so charged the jury, that there was no testimony in the case that the deceased was obliged to ride upon the cow-catcher, and left it to the jury to determine whether or not this constituted negligence on his part. In the absence of proof, we cannot believe that any railroad company requires its switchmen, or any of its employés, to ride in so dangerous a place. There was a safer place for him to ride. He was neither required nor directed to ride in a position which every person of ordinary intelligence and observation knows was the most dangerous he could have chosen. The fact that upon switch-engines switchmen rode standing upon the platform provided for them in front of the engine had no tendency to prove that the deceased was justified in riding in a sitting posture upon the cow-catcher of a road-engine; nor would the fact that switchmen were in the habit of riding upon the cow-catcher excuse the deceased, as between him and defendant. Yet the judge substantially left the jury to determine the question of contributory negligence by the determination of the question as to whether the deceased was riding in the usual and ordinary place upon the engine. If switchmen always rode there, still that fact would not take them without the rule of contributory negligence. When a safer place is provided, and employés choose a more dangerous one, they do it at their own risk. The difference in danger between standing on a platform of a regular switch-engine and sitting on a cow-catcher, with one's legs hanging over it, is apparent. In the one case the switchman is ready to jump upon the approach of danger; in the other, considerable time must elapse before he could recover his standing position upon the pilot beam, and put himself in readiness to avoid danger. In the

present case, deceased was the only one upon the engine who was injured. He chose the only place in which he could have been injured, and chose a sitting instead of a standing posture. *Railroad Co. v. Jones,* 95 U. S. 439; *Doggett v. Railroad Co.,* 34 Iowa, 284; *Kresanowski v. Railroad Co.,* 18 Fed. Rep. 229.

We quote with approval the language of the Court in *Railroad Co. v. Jones,* as applicable to this case:

"This [contributory negligence] is shown with as near an approach to a demonstration as anything short of mathematics will permit."

There was no fact in this case for the determination of the jury. The question was therefore one purely of law. It was therefore the clear duty of the court to instruct the jury to find a verdict for the defendant. It was as clearly its duty as it would be to determine the legal effect of a contract the terms of which are undisputed.

Judgment is reversed, and case remanded for a new trial, with costs of both courts.

The other Justices concurred.