GEORGE S. WILSON, ADMINISTRATOR, ETC., v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Railroad companies—Injury to employé—Contributory negligence —Violation of rules—Directing verdict—Error without prejudice.*

1. So long as the result attained by the direction of a verdict is the right one under the law, the reasons given by the court for such action, even though fallacious, cannot be prejudicial.

2. Where an experienced freight brakeman, instead of using side ladders provided by the company for mounting cars, goes between the cars of a moving train, and crawls over or under the bumpers of the cars, in order to reach a foothold or handhold on the opposite side, which he could use as a ladder to enable him to get to the top of the cars, no claim can be sustained for damages on account of the resulting consequences; citing *Glover v. Scotten*, 82 Mich. 369.

3. The contention that, because the defendant must have known that many of its employés, in violation of its rules, were frequently accustomed to go between the cars of moving trains, therefore it cannot be considered negligence for them to do so, can have no force in this case, however conclusively it may be made to apply to strangers, who, seeing repeated violations of known rules, are led into the belief that they are abrogated, or to employés who are compelled by positive orders to violate such rules, or when such a system of timing the trains or conducting the business of the company is adopted as to make it necessary for them to violate known rules of safety in order to do the work required of them. When no such condition exists, employés should observe rules made for their protection

as well as for the safety of their fellow-workmen, and, failing in this, the fault must be considered their own; citing *Brennan v. Railroad Co.*, 93 Mich. 156.

Error to Jackson. (Peck, J.) Argued November 16, 1892. Decided December 3, 1892.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Blair, Wilson & Blair*, for appellant.

*Parkinson & Day*, for defendant.

DURAND, J. The declaration in this cause contains two counts. The neglect charged in each count is that the defendant, in violation of its duty, negligently caused to be used upon the freight train upon which plaintiff's decedent, Samuel H. Wardwell, was employed as a brakeman, a certain car which was unsafe, in that the wood in which certain screws or bolts were fastened, which held in place a certain iron rail or bar on the end of the car, used by the brakeman as a foothold to step upon, was rotten and decayed, and that, when the deceased attempted to use it for that purpose, it pulled out of the rotten wood, and gave way, and he was killed. In the first count it is charged that the accident occurred by reason of his having stepped upon this foothold, and, in the second count, that it occurred by reason of his grasping it with his hands to support his weight, and that by reason of the defect in the wood it pulled out, and he was precipitated to the ground, and killed by the moving train. The declaration also contains the usual and necessary averments of due care on the part of the deceased, and that the accident was without fault on his part.

The evidence shows that the deceased was, at the time of the accident, a brakeman in the defendant's employ,

and had been engaged for it in that capacity for several years. He was a strong, healthy man, of good habits and intelligence, and was 43 years of age. He was a trusty man, thoroughly experienced in the business, and fully aware of the dangers attending it, as well as of the necessity of observing great care in the performance of his duties in order to protect himself from the serious accidents to which those engaged in that employment are constantly subjected.

On the morning of August 1, 1890, he left Jackson with a freight train, upon which he was acting as rear brakeman, and arrived at Lansing at about 4:30 o'clock A. M., standard time. The train stopped at Lansing for a short time, where some cars were cut out, but, as they were taken from the front part of the train, the work connected with it was attended to by the head brakeman, whose duty it was, and the deceased had nothing to do with it, nor any duty to perform in relation to it. There was therefore no reason growing out of his employment, or connected with his discharge of any duty or service for the defendant, requiring him to leave the train at all during its stop at Lansing. He did, however, do so for some purpose of his own, and the conductor, who is plaintiff's witness, testified that before the train started· he saw him leaning against a car on a side track east of the train, and some three or four feet south of the south line of Michigan avenue, and gave him the signal that the train was about to start; that, when he was motioned to, he walked towards the train, after the train got under headway. He was walking southward, and the train was moving northward. This was the last time he was seen before he was killed.

The Michigan avenue referred to is a street running east and west at right angles with the railroad track, and it appears from the testimony that at least 9 or 10 cars of the train were south of the avenue at the time it was started. There is no living witness who saw what happened

after the train started, but it is apparent from the circumstances disclosed by the undisputed testimony that the deceased walked about 75 feet south of Michigan avenue before he attempted to get on the train, and during this time several cars passed him that had side ladders upon them, and which he could have used with comparative safety in getting aboard the train, had he chosen to do so. This he did not do, but went to the rear end of a car described as a "C. S. L.," or Canada Southern Line car, furnished by the Chicago & Eastern Illinois Railroad Company, and which was then being drawn as a part of the train by the defendant, and attempted to get aboard at that place. In doing so it is entirely clear from the testimony that he passed in between the cars from the easterly side of the train, and crawled either over or under the bumpers, and attempted to get on top of the car by the use of what is variously called by the witnesses a "handhold" or "foothold," which was fastened into the west side of the rear end of the car. When his absence was discovered it was found that the handhold referred to had pulled out of the wood; that the wood into which it was fastened had become rotten, and, when the strain was put upon it, it gave way, and he was dragged along under the train and killed.

Testimony was given in relation to the inspection of the car in the ordinary way, and that the defect complained of was latent, and not discoverable by the ordinary methods of inspection; that it appeared to be a dry rot, which the paint on the car had concealed; and it was also proven that the car did not belong to the defendant, but was being drawn by it in the usual manner pursued by a prudent railroad company, with cars belonging to and received by it from other railroad companies.

It also appears from the testimony that rule 29 of the

defendant company, among other things, contains the following:

"Many of the foreign and line cars running over this road are not equipped with ladders like those on Michigan Central cars; some having the ladders on the ends, others on the sides; some having stirrups on the bottoms of the car bodies, and others without. Trainmen and switchmen will examine the ladders of all cars, and note the situation and condition, before making use of same. * * * Jumping on or off cars or engines in motion, entering between cars in motion to couple or uncouple them, and all similar imprudences, are forbidden. Every employé is required to exercise the utmost caution to avoid injury to himself and fellow-employés, especially in coupling, switching, or other movements of cars and trains."

The deceased was entirely familiar with this rule. In a paper signed by him on December 21, 1884, and delivered to defendant's agent, he admitted that this rule had been read over to him; that he was furnished with a copy of it; that the dangers of the employment were explained to him; that he was enjoined to use constant and proper care to avoid injury to himself and others; and in it he promised to make himself familiar with, and be governed by, the rules and regulations of the company. It appears that he had receipted for 10 different time cards, each of which contained the rule referred to, and that he had receipted for the time card No. 286, in force at the time of his death, and which included the same rule. Besides this, being an intelligent, trusty, and sober man, he had obtained by long experience a thorough knowledge of the great danger he was placing himself in by getting onto a moving train in the manner he did.

Under this state of facts, the circuit judge took the case from the jury, and ordered a verdict in favor of the defendant. The plaintiff contends that he did so erroneously. As the action of the circuit judge in directing a

verdict for the defendant was right under the plaintiff's own showing, it is unnecessary to adopt, or even to discuss, the reasons he gave for such action. So long as the result attained is the right one under the law, his reasons for such action, even though fallacious, cannot be prejudicial.

The fact that the defendant may have neglected a duty, and that an injury has resulted, is not all that it is necessary to show to entitle the plaintiff to recover. In addition to this, it is necessary for it to appear that the person injured was in the exercise of due care, and that he did not have a share in contributing to the resulting injury. The latter is as important a factor in an action for damages for negligence as the former. This rule is unquestioned, and is to be fairly and promptly recognized in all cases when its application is required.

In this case it is clear that the decedent was guilty of as serious negligence, and did as much to contribute to the injury, as the defendant is charged with having done. He was fully advised of the danger, and from his own knowledge and experience was entirely able to judge of the care required of him in order to protect himself from serious injury. He was not in the performance of any duty for the company after he left and before he attempted to get aboard the train at Lansing. He was not ordered by the defendant or any of its officers or agents having authority to give such orders to take the risk he did, and there was no reason for his waiting until the train was in motion before attempting to get upon it. There was no reason why he should have permitted cars to pass by him that had side ladders upon them, which he could have used with safety, without using them for the purpose of climbing upon the train. The method he adopted of going in between the cars of a moving train, and crawling over or under the bumpers, in order to reach a foothold

or handhold on the opposite side, which he côuld use as a ladder to enable him to get to the top of the cars, was so unnecessary, and so extremely hazardous, that it must be held that he was guilty of such contributory negligence as to preclude the plaintiff from recovering for the injury, even though the defendant was also negligent in not having made proper inspection of the car. The defendant having furnished side ladders which he could have used without danger, it was his duty to use them for the purpose for which they were intended. Instead of doing so, he took a course which was the most dangerous he could possibly have chosen, and one which no person of ordinary intelligence or observation should have taken. Having done so, no claim can be sustained for damages on account of the resulting consequences. *Glover v. Scotten,* 82 Mich. 369.

The contention that, because the defendant must have known that many of its employés, in violation of its rules, were frequently accustomed to go between the cars of moving trains, therefore it cannot be considered negligent for them to do so, can have no force in this case, however conclusively it may be made to apply to strangers, who, seeing repeated violations of known rules, are led into the belief that they are abrogated, or to employés who are compelled by positive orders to violate such rules, or when such a system of timing the trains or conducting the business of the company is adopted as to make it necessary for them to violate known rules of safety in order to do the work required of them. When no such condition exists, employés should observe rules made for their protection as well as for the safety of their fellow-workmen, and, failing in this, the fault must be considered their own. *Brennan v. Railroad Co.,* 93 Mich. 156. In this case the evidence of contributory negligence is undisputed, and is so conclusive that there is no fact in regard to it.

which should have been left to the determination of the jury, and the circuit judge did right in directing a verdict for the defendant.

It follows that the judgment must be affirmed, with costs.

The other Justices concurred.