JAMES A. BENAGE, ADMINISTRATOR, ETC., v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

[See *post*, 79.]

*Injury to railroad employé—Contributory negligence.*

1. A brakeman who rides in a standing position on the brake-beam of the tender of an ordinary road engine while backing across a river upon a trestle, at a rate of speed of from five to eight miles per hour, he having no place to hold onto except the draw-bar, against which he leans, and being in a position where he cannot see the engineer or fireman or be seen by either of them, is guilty of such negligence as will bar a recovery for injuries received by being struck by the end of a gate which had in some way become unfastened, and swung partly across the track, so as to come in contact with the rear end of the tender, and slide along, and crush the brakeman against the draw-bar.

2. The contention that the swinging in of the gate was not one of the dangers to be expected, and that the brakeman had the right to assume that the railroad company would discharge its duty, and not permit the gate to be unfastened or across the track at the time of the accident, as it was closed only at night and opened each morning, cannot be sustained, the brakeman being in a position where he could not escape injury if the tender backed into any other obstruction upon the track, and likely to be thrown off by any sudden starting of

the engine; nor will it do to say, under these circumstances, that, because it was the custom of others to ride in the same exposed place, therefore the brakeman was in the exercise of due care.

Error to St. Joseph. (Loveridge, J.)   Argued June 7, 1894.   Decided September 25, 1894.

Negligence case.   Plaintiff brings error.   Affirmed.   The facts are stated in the majority opinion.

*R. R. Pealer, George E. Miller,* and *Bishop E. Andrews,* for appellant.

*C. E. Weaver (George C. Greene* and *O. G. Getzen-Danner,* of counsel), for defendant.

LONG, J.   Plaintiff's intestate, Jacob Gee, was a brakeman in the employ of the defendant company, which owned and operated a side track crossing the Kalamazoo river in the village of Otsego.   This side track was placed across the river by the company for the purpose of running its cars from the main line to the Bardeen paper mill, to transfer from the mill its manufactured product.   It was built upon a trestle, and in a circular form, until it reached the manufacturing plant.   Across the river from the main line the Bardeen Paper Company had erected gates across the track, just at the edge of the river.   One of these gates was hung on hinges so that, when unfastened, it would, of itself, swing across the track.   The gates were so placed there with the consent of the defendant company. They were fastened to upright posts, which were fastened to bed-pieces extending partly under the track; and, as claimed by plaintiff, the posts and gates were so connected to the railroad track or the trestle that, by the jar of a train or engine crossing, the upper or right-hand gate would become unfastened, and swing across the track.

On July 18, 1892, an engine and a tender, connected,

were to be taken across from the main track to haul out some cars upon the other side. The engine was in the charge of the engineer and fireman. Plaintiff's intestate was a brakeman at work under the direction of the conductor of the train. As the engine and tender were about to be started across this trestle, backing up, the conductor of the train and Gee stepped upon the brake-beam, one each side of the draw-bar, to ride over, Gee intending to couple the engine to the cars which were to be hauled out. As the tender neared these gates, the one upon the side where Gee was riding, being unfastened, stood partly open, so that, as the rear end of the tender reached it, the end of the gate came in contact with the rear end of the tender, and, sliding along, crushed Gee against the draw-bar, and injured him so severely that he died from such injuries on the same day. This action is brought to recover damages for negligently causing Gee's death. On the trial the court directed a verdict in favor of the defendant company, on the ground that Gee was guilty of contributory negligence in riding on this brake-beam.

The case has been very fully and ably argued in this Court. Counsel for plaintiff contend that Mr. Gee's position on the brake-beam, though dangerous, yet was not the proximate cause of his injury and death, and therefore, if he came to his death through the negligence of the company, it cannot escape liability by saying the decedent was in a dangerous place; that the mere fact that he was in a position where he might be injured in some other way would not excuse the company from the consequences of its own neglect. It is contended that at least it was a question for the jury. It appeared from the testimony given on the trial that other employés of the defendant company had been for some considerable time accustomed to ride in this way on this and other

engines, and it is therefore claimed that Gee could not, as matter of law, be said to have been guilty of negligence in doing what was customary to be done there.

From a careful examination of the authorities, we are led to the conclusion that the court below was not in error, under the circumstances shown in this record, in the direction given to the jury. The engine and tender were similar to those used in the general business of the company over the line of its road. It was not a yard engine. It had no foot-board, like those at the rear end of tenders upon which so often employés ride back and forth to attend switches or to couple or uncouple cars. The brake-beam was about 7 inches in width at the center, and continued for 12 inches each way, when it tapered down to $3\frac{1}{2}$ inches, and was only 5 feet 8 inches long. It was 29 inches from each end of this beam to the outside of the tender. The men standing on this beam had no place to hold on, except the projection of the draw-bar, against which they leaned. In this position they could not see the engineer or fireman, or be seen by them. The engine was running from five to eight miles an hour, according to the testimony. All the witnesses, without exception, pronounced it an unsafe place to ride. The rules of the company, with which the deceased must have been familiar, provide, among other things:

"It is made hereby the right and duty of every employé, under all circumstances, to take sufficient time before exposing himself to danger to make such examination as is here required, and refuse to obey any order which would imperil his life or limb."

From the testimony, therefore, which was substantially uncontradicted, it appears that this was a dangerous place in which to attempt to ride. With no place to hold by the hands, except the draw-bar, and standing upon this narrow and confined place, with nothing to alight upon

but an open trestle if he jumped, and out of the sight of the engineer and fireman, and presumably not within their hearing above the noise of the engine in motion, any person riding in this way would be perfectly helpless, should accident happen. Yet counsel contend that the swinging in of the gate was not one of the dangers to be expected, and that the deceased had the right to assume that the defendant would discharge its duty, and not permit the gate to be unfastened or across the track at that time, as it was closed only at night, and opened each morning. But the deceased was in a position where he could not escape injury if the tender backed into any other obstruction upon the track, or he was likely to be thrown off by any sudden starting or stopping of the engine. It will not do to say, under these circumstances, that, because it was the custom of others to ride there, therefore he was in the exercise of due care. It is apparent that the deceased must have known, as others did, that it was dangerous, and that he was willing, contrary to the rules of the company, to take his chances. It appeared from the testimony that he was not compelled to ride there. He could have gone into the cab of the engine, as brakemen were permitted to ride there, and thus have been in a safe place, compared to riding on the brake-beam.

The case falls within the rule laid down in *Glover v. Scotten*, 82 Mich. 369. There the deceased was riding on the cow-catcher, in a sitting position, and with his legs hanging over. It was said:

"The difference in danger between standing on a platform of a regular switch-engine, and sitting on a cowcatcher, with one's legs hanging over it, is apparent. In the one case the switchman is ready to jump upon the approach of danger; in the other, considerable time must elapse before he could recover his standing position upon the pilot beam, and put himself in readiness to avoid danger."

Here the deceased was utterly helpless. He could not

avoid danger by anything he could do. He could not jump, or protect himself at all, and this he must have known when he took his place there. It cannot be said that the position he was in was not the proximate cause of the injury. He was in the only place where he could have been injured by the gate, or any collision by the rear end of the tender, and a safe place had been provided. As was said in *Glover v. Scotten, supra,* "nor would the fact that switchmen were in the habit of riding upon the cow-catcher excuse the deceased, as between him and defendant."

We think the case conclusively shows that the deceased was guilty of contributory negligence, and there was no question in it for the determination of the jury.

The judgment must be affirmed.

GRANT and HOOKER, JJ., concurred with LONG, J.

MONTGOMERY, J. *(dissenting)*. The facts are sufficiently set forth in the opinion of Mr. Justice LONG. I think the case should have been submitted to the jury. It was the duty of the defendant to provide a reasonably safe place for plaintiff's intestate to work, and it can hardly be contended that it conclusively appeared on the trial that defendant had performed this duty, in view of the fact that the motion of the train was sufficient to cause the gate to become unfastened, and swing around so as to come in contact with any person who happened to be riding on the rear of the train. Nor do I think that negligence of the plaintiff's intestate, which contributed to the injury, was conclusively shown. It would not have been negligent to ride upon the rear of the train. It is true it is said that the position which decedent occupied on the rear of the train was such as to render him subject to danger, but what danger? Obviously, the danger of being thrown from his post by the motion of the car.

But the injury to decedent did not result from this cause. Certainly the fact, if it is a fact, that he assumed such a risk as that of falling from the car, did not make him a legitimate mark for the trespass or negligence of others. I think the case falls within the principle of *Gray v. Scott,* 66 Penn. St. 345, in which case a car was negligently shoved over the end of a track, and killed a boy playing in the passage. The boy had been frequently warned not to play in the passage, on account of danger from trucks and wheel-barrows; but it was held that, as he had no reason to expect harm from the cars, from being in the passage, his failure to heed the warning was not negligence contributing to the injury. See, also, section 33 of Beach on Contributory Negligence, and cases cited. I do not think it can be said, as a matter of law, that one who is riding on the rear of a train moving backward is bound to anticipate obstructions on the track. This being so, it is immaterial whether his position subjected him to other dangers than that which occasioned the injury.

I do not attempt to distinguish *Glover v. Scotten,* 82 Mich. 369, for the reason that I regard the case as a departure from principle.

McGRATH, C. J., did not sit.