# JUNE TERM, 1905.

MILBOURNE *v.* ARNOLD ELECTRIC POWER STATION CO.

1. MASTER AND SERVANT — INJURIES TO SERVANT — RAILROADS — CONSTRUCTION—VICE-PRINCIPAL.

  The general superintendent and manager of a company constructing a railway is a vice-principal, and not a fellow-servant, of a laborer engaged in the work.

2. SAME—COLLISION—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

  In an action for injuries to a servant while riding on a railway construction train, caused by a collision with other loaded cars left on a spur track, evidence examined, and *held*, to authorize a finding that defendant's general superintendent was negligent in placing such loaded cars on the spur track, and in failing to give notice of the fact to those in charge of the construction train. OSTRANDER, J., dissenting.

3. SAME—CONTRIBUTORY NEGLIGENCE—UNANTICIPATED DANGER.

  The servant of a railway construction company elected to ride on the outside of a house car while returning from the day's work, in order to watch the tools, with the acquiescence of defendant's assistant superintendent, and was injured in a collision between the train on which he was riding and loaded gravel cars negligently left on a spur track. *Held*, that he was not guilty of contributory negligence, as a matter of law, because of the position he assumed, the danger of collision being not one he was required to anticipate.

4. SAME—DUTY OF SERVANT—DIRECTION OF PRINCIPAL—ASSUMPTION OF RISK.

  Plaintiff, the servant of a railway construction company, took a position on the outside of a house car while returning from the day's work, and, on being cautioned by the assistant superintendent to go inside, replied that he got up there to watch the tools and see that none fell off, and that he had a good seat, whereupon the roadmaster replied, "All right, then," and plaintiff remained in his position. *Held*, to justify an inference that plaintiff was directed to stay where he was and there perform a duty for defendant.

(316)

5. SAME—COLLISION—ASSUMPTION OF RISK.

> Where, in an action for injuries to an employé by a collision, while riding on a railway construction train, it appeared that the shock of the collision was much greater than that ordinarily resulting from cars coming together on the siding, plaintiff did not assume the risk, as a matter of law. HOOKER and GRANT, JJ., dissenting.

·Error to Ingham; Wiest, J.  Submitted November 15, 1904.  (Docket No. 81.)  Resubmitted February 7, 1905. Decided June 6, 1905.

Case by Cyrus A. Milbourne against the Arnold Electric Power Station Company for personal injuries.  There was judgment for defendant notwithstanding a verdict for plaintiff, and plaintiff brings error.  Reversed, and judgment entered for plaintiff.

*John J. Zimmer* and *Black & Reasoner*, for appellant.

*Rollin H. & Seymour H. Person*, for appellee.

CARPENTER, J.  Plaintiff brought this suit to recover compensation for injuries received while in defendant's employ.  He recovered a verdict in the court below.  On a motion for a new trial the lower court set aside the verdict on the ground that, under the testimony, a verdict should have been directed for defendant.  Upon the stipulation of the parties that "if the evidence offered" showed, "as a matter of law, that the plaintiff was not entitled to a judgment, that a new trial was not desired by plaintiff," and that, upon the other hand, "if the evidence warranted" the jury in finding a verdict for the plaintiff, the judgment heretofore entered for the plaintiff should stand affirmed, the trial court entered judgment for the defendant, "subject, however, to the right of the plaintiff to have said judgment reviewed by the Supreme Court."

The record then presents this single question:  Did plaintiff make a case which entitled him to take the judgment of the jury ?  For the purpose of determining this ques-

tion, it is obvious that we must consider that testimony from the point of view most favorable to the plaintiff. Defendant was a foreign corporation constructing the electric road between Lansing and St. Johns. Plaintiff was a common laborer in defendant's employ. The day of his injury, November 29, 1901, he had been employed in the work of construction about six miles north of Lansing. His injury occurred after dark by a collision between the construction train of defendant, upon which he was being carried home, and a train of cars loaded with gravel, also belonging to defendant. The collision occurred on a spur track situated on the east side of the main track, at a place called "Hurd's Gravel Pit," about three miles north of Lansing. The train upon which plaintiff was being carried consisted of a locomotive pushing 10 empty flat cars and pulling a single way car. This way car may be described as a flat car with a house built upon it. This house did not occupy the entire surface of the car. There was left an uncovered space five or six feet long at the front end. Plaintiff, when he boarded the train, instead of accompanying his fellow workmen inside the house, seated himself on this space, with his left foot braced against a bolt which projected about an inch upward from the front end of the car. The tools used by plaintiff and his fellow workmen also occupied this space. Defendant's assistant superintendent or roadmaster, who was on the train, told plaintiff that he had "better go inside" the way car. Plaintiff replied, "I got up here to watch the tools to see that none of them fell off, and I have a good seat." The roadmaster said, "All right, then," and went on the engine. According to the custom of defendant and the orders of defendant's manager, the empty cars on this train were to be left on the spur track at the gravel pit before mentioned. When the train reached that point, it went on said spur for the purpose of leaving said empties, and, while going at quite a rapid speed, it collided with the cars loaded with gravel, also situated on said track, and plaintiff was thrown from the car and seriously injured.

It is to be inferred from the testimony that the cars standing on said spur track, 10 or 11 in number, had been loaded with gravel that day while situated on another spur a few feet south of the spur above described, but on the west side of the main track, and that late in the afternoon, by the order of defendant's general superintendent and manager, a Mr. Quick, they had been moved to said east spur. Until the very day of plaintiff's injury, this east spur had been a siding long enough to hold all the cars of defendant, 22 in number. That day, to the knowledge of plaintiff and those in charge of the train upon which he was riding, it had been made into a spur, and, as a result, shortened so that it would only hold 11 or 12 cars. Before it was shortened, all the cars were frequently placed on said siding. No light was placed on said loaded cars, and no notice was given by Mr. Quick to those in charge of the train upon which plaintiff was riding that the loaded cars had been placed on said spur track.

It is contended by defendant that from these facts no inference of negligence can be drawn, that plaintiff was guilty of contributory negligence, and that he assumed the risk of the danger which resulted in his injury.

It is settled by our decisions (see *Harrison* v. *Railroad Co.*, 79 Mich. 409 [7 L. R. A. 623]; *Palmer* v. *Railroad Co.*, 87 Mich. 281; *La Barre* v. *Railway Co.*, 133 Mich. 192) that the general superintendent, Quick, was a vice-principal, for whose negligence defendant is responsible.

We think from this evidence the jury might infer that Quick was negligent in placing these loaded cars on this spur, and in failing to give notice of that fact to those in charge of the train upon which plaintiff was riding. In stating this conclusion, we have not overlooked defendant's contention that there was no necessity for notice to those in charge of the train, because they knew that these loaded cars would be on one or the other of the two spurs, and that they were frequently placed on the east spur when it was a siding sufficiently long to hold all the cars.

We do not think that the court can say that these facts dispensed with the necessity of notice. Those in charge of the train might very well believe, and it is apparent that they did believe, that because of the shortening of the track, and their orders and custom to put the empty cars there, that they would find it safe for that purpose.

When plaintiff chose to remain outside the house on the way car, was he guilty of contributory negligence? It may be conceded, that in consequence of making this choice, plaintiff was injured. This circumstance has, however, in my judgment, no material bearing on the question of his contributory negligence. In determining his choice, plaintiff was bound to take into consideration such dangers, and such dangers only, as an ordinarily prudent person might apprehend, and surely no ordinarily prudent person would have apprehended the collision. This statement of the rule is not in conflict with the proposition, in support of which cases are cited in the accompanying opinion of Justice HOOKER, that one who is actually guilty of negligence in choosing an unsafe position cannot recover because he is there injured by a danger which he did not anticipate. The proposition which it is claimed those authorities establish would prevent plaintiff claiming that, though negligent, he might recover because his injury was caused by an unanticipated danger. No such contention is involved in the reasoning of this opinion. The proposition which it is claimed those cases establish, that one who has negligently chosen a position cannot recover for an injury there resulting from an unanticipated danger, is radically different from the proposition asserted by me—a proposition which I cannot but regard as elementary—that one will not be adjudged negligent because he did not anticipate a danger which he could not anticipate. I am aware of no authority which declares a contrary principle. Can we say that no ordinarily prudent person would have taken the course plaintiff took? To do this, we must say that the danger to which this position exposed him was such that no ordinarily

prudent person would under the circumstances have risked it. The danger that was risked, the danger which an ordinarily prudent person should have apprehended, was that of falling or being thrown off the car by its ordinary management. The risk of that danger was undoubtedly assumed by plaintiff, but he would not therefore be guilty of contributory negligence, unless no person of ordinary prudence would have assumed that risk. I do not think it can be said as a matter of law that no person of ordinary prudence would have assumed it. Such a person might reasonably suppose, as presumably plaintiff supposed, that he could protect himself from such dangers by bracing his foot against the projecting bolt.

In considering the question of plaintiff's contributory negligence, we should bear in mind the circumstance under which plaintiff acted. The fact that one takes a risk in the performance of a duty is a circumstance entitled to great weight in determining whether his conduct was negligent. See *Eckert* v. *Railroad Co.*, 43 N. Y. 502; *Spooner* v. *Railroad Co.*, 115 N. Y. 22. Can we infer that plaintiff remained outside the way car in the performance of a duty? That depends upon the inference to be drawn from the conversation between plaintiff and his superior, defendant's assistant superintendent. The assistant superintendent told plaintiff he had better go inside. Plaintiff replied, "I got up here to watch the tools to see that none of them fell off, and I have a good seat." The roadmaster said, "All right, then," and plaintiff remained in his position. In considering this conversation, we must bear in mind the elementary rule that, if susceptible of more than one construction, its meaning is to be determined by the jury, and not by the court. See *McKenzie* v. *Sykes*, 47 Mich. 294. I do not deny that from this conversation the jury might have inferred that defendant merely acquiesced in plaintiff's determination to ride on the open car. But I cannot assent to the contention that this is the only inference they could legitimately draw. By saying, in answer to the direction to go inside, "I got

up here to watch the tools to see that none of them fell off, and I have a good seat," the plaintiff merely explained his purpose; he did not assert a settled determination to remain in that position. At least, the jury may have found that he did not. By replying, "All right," to plaintiff's proposal to stay and watch the tools, the assistant superintendent not only acquiesced in plaintiff's remaining where he was, but also furnished evidence of an approval of his purpose in remaining. Plaintiff proposed to stay there and watch the tools; that is, I take it, to prevent their loss or damage. From defendant's answer, "All right," the jury certainly could have inferred that defendant approved his purpose, and thereby ratified this self-assignment to a new duty. If, when plaintiff had said, "I will stay here and watch the tools," defendant's superintendent had replied, "I am glad you suggested watching those tools; they need to be looked after; stay here and see that they do not get lost or damaged"—plaintiff's assignment to a duty outside the way car would be clear. It is true that defendant's superintendent did not use the supposed language, but the jury might have inferred from the language he did use that that is precisely what he meant, and what the plaintiff supposed and had a right to suppose that he meant. From this conversation, it might therefore be inferred that plaintiff was directed to stay where he was and there perform a duty for defendant. The fact that plaintiff remained in this position to perform a duty clearly distinguishes the case from that of a passenger who, for no other reason than that of his personal gratification, rides on the platform of a car by the acquiescence of a trainman.

In support of the claim that plaintiff was guilty of contributory negligence, we are referred to *Glover* v. *Scotten*, 82 Mich. 369; *Wilson* v. *Railroad Co.*, 94 Mich. 20; *Benage* v. *Railway Co.*, 102 Mich. 76; *Nieboer* v. *Railway Co.*, 128 Mich. 486; *Railroad Co.* v. *Jones*, 95 U. S. 439; *Hickey* v. *Railroad Co.*, 14 Allen (Mass.), 429; *Posey* v. *Railway Co.*, 102 Fed. 236; *St. Louis, etc., R.*

*Co.* v. *Schumacher,* 152 U. S. 77; *Warden* v. *Railroad Co.,* 94 Ala. 277 (14 L. R. A. 552).

In *Glover* v. *Scotten, Warden* v. *Railroad Co.,* and *Railroad Co.* v. *Jones,* supra, it was held negligence for a switchman to ride on the pilot of an engine. In *Wilson* v. *Railroad Co.,* supra, it was held negligence for a brakeman to crawl over or under the bumpers of a moving car. In *Benage* v. *Railway Co.,* supra, it was held negligence for a brakeman to ride on a brake-beam while a train was moving. In *Nieboer* v. *Railway Co.,* supra, it was held negligence for a passenger to ride on the deadwood of a street car, and that the conductor had no authority to permit him to ride there. In *Hickey* v. *Railroad Co.,* and *Posey* v. *Railway Co.,* supra, it was held negligence for a passenger to ride on the platform of a car in which he was being carried. In *St. Louis, etc., R. Co.* v. *Schumacher,* supra, it was held negligence for an employé to ride on the platform of a flat car with his feet hanging over the side contrary to instructions.

In each of these cases the plaintiff assumed a danger greater and more obvious than in the case at bar. If these authorities have any application, it must be because of the principle there asserted (see *Glover* v. *Scotten,* supra) :

" When a safer place is provided, and employés choose a more dangerous one, they do it at their own risk."

I think that this principle was stated with reference to the particular facts of that case. But even if it be regarded as one of universal application, it cannot, in my judgment, be applied in this case. When it was agreed between plaintiff and defendant that the former should stay outside and watch the tools, he had no right to go inside—he was directed to stay outside. There was no longer *any safer place provided for him.* I do not see how we can hold plaintiff to be guilty of negligence without holding that a failure to adopt the safest course of conduct is negligence. We have distinctly held that such

failure is not negligence.   See *Fort Wayne, etc., R. Co.*
v. *Gildersleeve*, 33 Mich. 133.   We think this case comes
under the rule, so often declared:

"That the question of plaintiff's contributory negligence
should be submitted to the jury,   *   *   *   where candid
and intelligent men might reach different conclusions
upon the facts."   *Becker* v. *Railway Co.*, 121 Mich. 580.

See, also, *Haines* v. *Railway Co.*, 129 Mich., at page
483, and the authorities there cited.

Neither do we think that the court can say, as a matter
of law, that plaintiff assumed the risk which occasioned
his injury.   We cannot say that plaintiff assumed it un-
less we can say that the risk was incident to his employ-
ment, or that he knew or should have known that the
loaded cars were on the spur.   See *Bradburn* v. *Rail-
road Co.*, 134 Mich. 575.   If his injury resulted from the
negligence of his employer, the risk was not incident to
plaintiff's employment.   It does not avail defendant to
say that plaintiff assumed the risk of the shock resulting
from cars coming together on the siding "with customary
force."   For, from the evidence, it may be inferred that
the shock of the collision was much greater than the shock
ordinarily resulting from cars coming together on the sid-
ing.   It certainly cannot be said that plaintiff knew that
the loaded cars were on the siding.   And if those in
charge of the train were not bound to know that they
were there—and we have held that they were not—neither
was plaintiff bound to know it.

We conclude, therefore, that the learned trial judge
erred in entering judgment for the defendant.   Plaintiff
is entitled to have that judgment reversed, and a judg-
ment entered on his verdict.   It is so ordered.

MOORE, C. J., and MCALVAY, BLAIR, and MONTGOM-
ERY, JJ., concurred with CARPENTER, J.

HOOKER, J. (*dissenting*).   I do not concur in a rever-
sal of this cause, for the reason that in my opinion the

testimony conclusively shows that the plaintiff assumed the risk of riding upon the end of the car, but for which he would have suffered no injury. He is justly chargeable with contributory negligence under the rule of the following cases cited by counsel: *Hickey* v. *Railroad Co.*, 14 Allen (Mass.), 429; *Posey* v. *Railway Co.*, 102 Fed. 236; *Glover* v. *Scotten*, 82 Mich. 369; *Railroad Co.* v. *Jones*, 95 U. S. 439. See other cases cited in defendant's brief: *Wilson* v. *Railroad Co.*, 94 Mich. 20; *Benage* v. *Railway Co.*, 102 Mich. 76; *Fluhrer* v. *Railway Co.*, 121 Mich. 217; *Nieboer* v. *Railway Co.*, 128 Mich. 487. The case of *Fluhrer* v. *Railway Co.* is closely analogous to the present one, and, in my judgment, identical in principle. Mr. Justice GRANT, with the approval of the entire bench, quoted from *Glover* v. *Scotten*, as follows:

"When a safe place was provided for switchmen to ride, and they chose to ride in a more dangerous one, and always did so, that would not release them from contributory negligence."

*Warden* v. *Railroad Co.*, 94 Ala. 277 (14 L. R. A. 552), is a similar case to *Glover* v. *Scotten*, supra, which it cites approvingly, together with many other cases involving the same point. See *Kresanowski* v. *Railroad Co.*, 18 Fed. 229; *Doggett* v. *Railroad Co.*, 34 Iowa, 284; *Flynn* v. *Railway Co.*, 83 Wis. 238; *George* v. *Railroad Co.*, 109 Ala. 245; *Wherry* v. *Railway Co.*, 64 Minn. 415. The case of *St. Louis, etc., R. Co.* v. *Schumacher*, 152 U. S. 77 (opinion by Mr. Justice Brown), is substantially on all fours with the present case.

I understand that the question of defendant's negligence, in occupying the exposed place, should not be made to depend upon the probability of a collision. In none of the cases cited was there a probability of the accident that actually occurred, or, for that matter, any other accident. In the great majority of cases trains go through without accidents and are operated without casualty. Yet all kinds of accidents do happen, and courts do not hold that

they must be anticipated before exposure to the possibility of them can be said to be negligent. In the minority opinion filed recently in the case of *Morgan* v. *Railway Co.*, 138 Mich. 631, many cases are cited which hold that it is negligence per se for a passenger to voluntarily and unnecessarily stand upon the platform of a coach, and none of them intimate that it depends upon the question of his knowledge of unusual circumstances which contribute to or cause the accident. If contributory negligence cannot exist until it can be said that it is incurred with the knowledge of the particular facts which are to cause the impending accident, there can be no such thing as contributory negligence in a large class of cases where it has not heretofore been questioned. My understanding is that if the act is hazardous, in the light of human experience, it is negligence which may become contributory if the injury could not have occurred but for such negligence, or is contributed to by such negligence. See *Quinn* v. *Railroad Co.*, 51 Ill. 495; *Camden, etc., R. Co.* v. *Hoosey*, 99 Pa. St. 492; *Worthington* v. *Railroad Co.*, 64 Vt. 107 (15 L. R. A. 326); *York* v. *Railroad Co.*, 84 Me. 117 (18 L. R. A. 60); *Rolette* v. *Railway Co.*, 91 Minn. 16.

In *Warden* v. *Railroad Co.*, 94 Ala. 277 (14 L. R. A. 552), the Alabama supreme court held it to be negligence per se for a brakeman to unnecessarily sit on a crossbeam in front of an engine running between stations, where the injury was directly the result of the pilot colliding with a rail of a bisecting railroad. The court said:

" Not only so, but it is equally clear from the testimony that the casualty was directly the result of the pilot's colliding with a rail of a bisecting road, that no other part of the train or engine was injured, that no other of the several persons on the train was hurt, and that he would not have been hurt but for his having taken this position on the pilot.

" There being thus no doubt that plaintiff's presence on the pilot contributed proximately to the injuries he sustained, the main question in the case is whether his being there at the time of the accident was negligence in so on

his part, and to be so declared by the court, as a matter of law. The authorities are believed to be uniform to the support of the affirmative of this inquiry. The investigations of the court and counsel have failed to disclose a single adjudged case to the contrary, while many courts are upon record as holding, either by analogy or directly, that to ride upon the pilot or crossbeam in front of an engine while proceeding on its way along the line of its track, without justifying necessity therefor, involves per se such negligence as will defeat an action counting upon injuries received while so riding, and which would not have been received but for the plaintiff's being there. Even the assumption of less dangerous, but at the same time improper, positions on moving trains, voluntarily and unnecessarily, has been many times held to be contributory negligence as a matter of law, neutralizing the negligence of the defendant, and destroying an otherwise good cause of action."

*Railroad Co.* v. *Jones*, 95 U. S. 439, is a case where a trainman rode on the pilot or bumper of an engine, while there was room for him in a box car provided for the purpose, and where he would have been safe. In *Warden* v. *Railroad Co.*, supra, in commenting on this case, the court said:

"There was room for him in the box car, as there was room for the plaintiff here on the train; and none of those in the box car were hurt, as here all who remained on the cars escaped injury. It was held that, as the plaintiff would not have been injured had he used ordinary care, he was not entitled to recover, Mr. Justice Swayne observing:

"'His injury was due to his own recklessness and folly. He was himself the author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit.'"

In *Kresanowski* v. *Railroad Co.*, 18 Fed. 229, it was held that the plaintiff himself so far contributed to his injury by his own negligence in placing himself in such a dangerous position that he could not recover; and that, there being evidence that there was no room for the plaintiff on the tender, and that he had in effect been author-

ized or invited by the company to ride over the pilot, that the plaintiff being of age, and able to see and know the risks of the position, even the fact of such invitation and authorization would not justify him in placing himself in a position of obviously great risk and danger.

Our own case of *Glover* v. *Scotten*, 82 Mich. 369, is cited with approval in *Warden* v. *Railroad Co.*, and commented on as follows:

"But the strongest support of this doctrine is found in the circumstances of a Michigan case, and the several decisions which were made in different actions which grew out of it. The facts were that a switchman in the employ of a railway company was killed. The engine upon which he was employed, and which was at the time engaged in switching cars about the yard of the company, ran into a truck owned by the defendant, an individual having no connection with the railway company, and driven by his teamster. The result of the collision was the death of the switchman, injury to defendant's teamster, and destruction of the truck and team. The switchman at the time of the collision was sitting on the crossbeam of the pilot, with his feet hanging down over the 'cowcatcher.' * * * Several actions grew out of the transaction. The teamster sued the railroad company, counting on the personal injuries he sustained. The company was found negligent; the judgment went against it, which was paid. The railroad company also paid the owner for the loss of his truck and team. The personal representative of the dead switchman sued the railroad company in the circuit court of the United States, claiming that the death of his intestate resulted from the negligence of the railroad company in not ringing the bell or blowing the whistle for the crossing over which the truck was passing when the collision occurred, in not having a flagman there to keep the way clear, in obstructing the switchman's view of the crossing, etc. Judge Brown, now of the Supreme Court of the United States, before whom the case was tried, directed a verdict for the defendant, upon the ground that the switchman was guilty of contributory negligence in being at the time on the crossbeam of the pilot. The administrator of the switchman then sued the owner of the team and truck, and this last case went to the Supreme Court of Michigan, and was there determined against the plaintiff, who had

recovered in the nisi prius court, on the ground that the trial judge had left it to the jury to say whether the switchman was guilty of contributory negligence, when the court itself should have determined that he was guilty of negligence which contributed to his death, as a matter of law, and thus withdrawn that issue from the jury altogether. GRANT, J., rendering the opinion of the court, said:

" 'Several questions are raised by the record, but the plaintiff's right to recover is barred by his decedent's contributory negligence, rendering a determination of the other questions unnecessary. There is no dispute about the facts. The judge found as a fact, and so charged the jury, that there is no testimony in the case that the deceased was obliged to ride upon the cowcatcher, and left it to the jury to determine whether or not this constituted negligence on his part. In the absence of proof, we cannot believe that any railroad company requires its switchmen, or any of its employés, to ride in so dangerous a place. There was a safer place for him to ride. He was neither required nor directed to ride in a position which every person of ordinary intelligence and observation knows was the most dangerous he could have chosen. The fact that upon switch engines switchmen rode standing upon the platform provided for them in front of the engine had no tendency to prove that the deceased was justified in riding in a sitting posture upon the cowcatcher of a road engine; nor would the fact that switchmen were in the habit of riding upon the cowcatcher excuse the deceased, as between him and defendant. Yet the judge substantially left the jury to determine the question of contributory negligence by the determination of the question as to whether the deceased was riding in the usual and ordinary place upon the engine. If switchmen always rode there, still that fact would not take them without the rule of contributory negligence. When a safer place is provided, and employés choose a more dangerous one, they do it at their own risk. The difference in danger between standing on a platform of a regular switch engine and sitting on a cowcatcher with one's legs hanging over it is apparent. In the one case the switchman is ready to jump upon the approach of danger; in the other, considerable time must elapse before he could recover his standing position upon the pilot beam and put himself in readiness to avoid danger. In the present case deceased was the only one upon the engine who was injured. He chose the only place in which he could have been injured, and chose a sitting posture instead of a standing posture.' "

In this Michigan case there was a collision not to be expected, and there was no suggestion of the theory that a

man was not to be charged with contributory negligence unless he had notice of the danger.

The case of *Martin* v. *Railroad Co.*, 41 Fed. 125, is another case where an employé, unnecessarily in a place of danger, i. e., on the platform, who was injured by an unforeseen collision, was chargeable with contributory negligence. See, also, *Judkins* v. *Railroad Co.*, 80 Me. 417; *Hickey* v. *Railroad*, 14 Allen (Mass.), 429; *Lehigh Valley R. Co.* v. *Greiner*, 113 Pa. St. 600. This case arose over an accident caused by a collision. *Martensen* v. *Railroad Co.*, 60 Iowa, 705.

The Federal Supreme Court has held to the same rule in *Railroad Co.* v. *Jones*, 95 U. S. 439. It was applied to a laborer who rode on a pilot, rather than in a car provided for the purpose, as we have already shown; while, as already said, the case of *St. Louis, etc., R. Co.* v. *Schumacher*, 152 U. S. 79, is not distinguishable from the present case, and contains no hint that the effect of plaintiff's was any different because he did not know of exceptional conditions and dangers. We can only ingraft such a rule upon the law by overruling not only a large number of cases in the various State and Federal courts, but the cases of *Glover* v. *Scotten*, 82 Mich. 369, *Benage* v. *Railway Co.*, 102 Mich. 73, and *Nieboer* v. *Railway Co.*, 128 Mich. 486. In both of the last-mentioned cases there were dissenting opinions, which took the ground that the question of contributory negligence depended upon the apparent, and not unforeseen, dangers. See dissenting opinions 102 Mich. 77, and 128 Mich. 491. But the doctrine was not accepted, but distinctly denied in both. See opinion of Long, J., 102 Mich. 76, and Grant, J., 128 Mich. 488, and authorities cited, including *Glover* v. *Scotten*, which is approved and followed in the former. The rule of *Glover* v. *Scotten* has been applied in many cases. It was announced by a unanimous bench, and, until the *Case of Benage*, it does not seem to have been questioned. That was an extreme case in this, viz., that the nature of the accident was extraordinary, so much so that it afforded a plausible

reason for the view taken in the minority opinion. But it was seen that the principle then announced, had it been adopted, would be forced upon us in all cases by inexorable logic, and it was deliberately discarded.

It is claimed that the question is affected by the conversation between the plaintiff and the assistant superintendent, i. e., the latter said, "You had better go inside," to which the former answered, "I thought I would stay here and look after the tools; I have a good seat;" to which the latter responded, "All right, then." It is only upon the theory that this gives the jury the right to infer from these words that which they do not import, viz., that the assistant superintendent's answer, or his failure to insist upon plaintiff's going inside, relieved the plaintiff from the assumption of the risk and the consequent contributory negligence. It does not justify the inference of a request to stay and care for the tools, nor is it evidence of more than acquiescence in the determination of the plaintiff to ride on the open car, *where he said he had a good seat,* at his own risk. The case is not different from that of a passenger who rides on a platform. The trainmen seldom order such to go inside, yet the failure to do so does not relieve the passenger from injuries resulting therefrom. The rule is that, when one voluntarily and *unnecessarily* occupies the dangerous place, he is guilty of contributory negligence. There is nothing in the testimony to indicate that plaintiff did not voluntarily and unnecessarily occupy this place of danger, hence the jury should not be permitted to infer the contrary. *Quinn* v. *Railroad Co.,* 51 Ill. 495; *Camden, etc., R. Co.,* v. *Hoosey,* 99 Pa. St. 492; *Worthington* v. *Railroad Co.,* 64 Vt. 107 (15 L. R. A. 326). See opinion of Hooker, J., in case of *Morgan* v. *Railway Co.,* 138 Mich. 631, for other authorities.

In the absence of *any* conversation, it is clear that no claim could be made that his act was not voluntary. The conversation actually had shows that the company's agent protested against his staying, i. e., gave him warning that he better go inside. The plaintiff not only remained out-

side voluntarily, but rather insisted on staying there. It is as though he begged the privilege. No further protest was made. The assistant superintendent said, "Very well, then;" in other words, "Do so if you wish to." The fact that plaintiff said he went there to watch the tools does not justify the assumption that he did not go there voluntarily and unnecessarily, or that he was even asked to stay and watch the tools, if that would in any case change his liability to answer for the negligence as his own voluntary act. *Wiggins Ferry Co.* v. *Hill*, 112 Ill. App. 475.

I do not express an opinion on other points.

The judgment should be affirmed.

GRANT, J., concurred with HOOKER, J.

OSTRANDER, J. I am in favor of affirming the judgment for defendant, upon the ground that the defendant is not shown to have been guilty of the negligence relied upon.