MURPHY *v.* GREAT LAKES DREDGE & DOCK CO.

1. MASTER AND SERVANT—LIGHTING—NEGLIGENCE.

In conducting excavation at night by means of steam shovels and of engines and cars to haul away the dirt, running into a pit 30 feet in depth between high walls, it was the employer's duty to provide such a reasonably sufficient lighting system as to render the operations safe for its employees; particularly when it appeared that trains were not subject to any set rules, schedules or regulations, and lights were necessary to safely operate them.

2. SAME—EVIDENCE.

Testimony in plaintiff's behalf that the lights became smoky or dim and some of them were out, that the night was stormy and dark, and that a collision occurred with some empty cars left on the track where it had not been customary to leave them, presented a question for the jury as to defendant's negligence, notwithstanding evidence offered by defendant to show that the lights had been inspected and were burning properly.

3. SAME—ASSUMPTION OF RISK—INCIDENTAL DANGERS.

Unless the risk was incident to plaintiff's employment

or he knew of the existence of the danger encountered, he could not be held to have assumed it.[1]

4. SAME—CUSTOM—NEGLIGENCE.

The issue whether it was customary to leave empty cars on the track where the collision occurred being supported by conflicting evidence on either side, it was open to the jury to infer that the engineer had a right to assume that his track was clear and that his negligence was not the cause of the collision.

5. SAME—CHARGE.

The trial court correctly charged the jury that plaintiff could not recover if the cause of the accident was the negligence of his fellow-servants, that if it was an ordinary or frequent occurrence to leave cars on the track in question, the engineer must have known of the possibility of danger and if fog or mist obscured his sight, or the lights were insufficient, he should have approached so carefully as to avoid an accident, that plaintiff knew his employment was dangerous when he went to work, and if he knew that the work was being carried on in such a way that an accident was likely to occur, he assumed the risk of it by remaining in the employment.

Error to Chippewa; Shepherd J., presiding. Submitted January 30, 1913. (Docket No. 137.) Decided May 28, 1913.

Case by Frank Murphy against the Great Lakes Dredge & Dock Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Davidson, Hudson & Green,* for appellant.

*M. M. Larmonth,* for appellee.

KUHN, J. In the spring of 1910 the defendant company was engaged in a large excavation job at Sault Ste. Marie in this State, known as the canal-widening

[1] The question whether a servant may assume the risk of dangers created by the master's negligence is treated in notes in 4 L. R. A. (N. S.) 848 and 28 L. R. A. (N. S.) 1215. And upon the assumption of obvious risks of hazardous employment, see note in 1 L. R. A. (N. S.) 272.

job. The excavating work was done by steam shovels, and the dirt was removed by means of small cars operated by engines on tracks built for that purpose. When the work of this construction was first started, a single track was used; but during the fall and winter prior to the accident which resulted in the present litigation another track was installed, known as track No. 2.

The plaintiff was engaged as a brakeman, and on the night on which it is alleged the injury occurred he, together with the engineer on the train on which he was working, named Cameron, took the train from the place near the water tank, which was at the top of the incline, down past the double track, and up on what was called the Vulcan track, below switch A, which was the junction of the two tracks near the scene of the operations of the steam shovel and where a railroad bridge crossed the cut. On the night in question three trains were at work on these operations, in charge of the following engineers, Cameron, Monkman, and Knox. The operations on this night were conducted as follows: The shovel, which was located east of switch A, would load a train of these cars, and the engine would then shove the train up the incline on track No. 2. In making this incline he would be assisted by two other engines, one having backed down from the train which had preceded him up the incline, and the other engine, which had left its train of empty cars on track No. 1, would drop in behind the loaded train and thus help it push up the hill, and then this engine would back down again and take its train of empties to the shovel. When the loaded train would get to the top of the hill, it would be taken over by another engine, known as the "snapper" engine, which engine would take it to the dumping grounds and would have the train ready for its engine upon the return from having assisted the next train in coming up the hill. The empties would

then be taken by their engine down track No. 1, with the engine backing down, followed by its train of empty cars.

The plaintiff, Murphy, made but one trip on the night in question. He went up with his load, uncoupled and came down track No. 2, and assisted in pulling Knox's train up. He then took his train of empties and backed down track No. 1 and collided with Monkman's train of empties, which were on track No. 1 near the railroad bridge. It is the claim of Murphy that it was his duty in coming down this hill, sitting on the engine, to look back and see that none of the cars of his train left the track, and that he did not look down the incline on the night in question, but relied on Cameron, who was his engineer, whose duty it was to keep a lookout to see that the track was clear. In the collision which occurred Murphy was seriously injured by falling under some of the cars and several of the empties were derailed. Suit was instituted and resulted in a verdict for plaintiff, upon which judgment was had, and the cause was brought here by writ of error.

It is the claim of plaintiff that the accident was due to the negligence of the defendant company because it had not formulated and put into effect a schedule and rules to govern the operation of these trains and also because the place where the work was being done was improperly lighted, and that because of that fact the company had not provided a sufficiently safe place for the employees to work. The company, appreciating that, and in order to make the place safe for the men to work at night, had, prior to the time of the accident, put in over the track from the top of the hill down to the bridge or near switch A a string of lights. They were 16 candle power and were on poles 15 feet high and were placed at different distances; on the crest of the hill at the place of the greatest curve they were about 10 or 12 feet apart,

and from that down the distance between them varied from, approximately, 15 to 25 feet at the bridge. It is the claim of plaintiff that these lights were insufficient and that they had become dim from the smoke and fog, so as to make it impossible for the engineer to see any considerable distance in going down the incline.

It is the claim of defendant that there was no showing of negligence on the part of the defendant which contributed to plaintiff's injury and that plaintiff, being a man of mature years, of more than average intelligence and experienced in the line of work in which he was engaged, assumed the risk incident to the employment.

A request was made, at the close of plaintiff's proofs and again at the conclusion of the trial, by defendant's counsel for direction of a verdict, and error is assigned because of the failure of the court to direct a verdict as requested.

It must be conceded that the operations being conducted were of a dangerous character, as we have the men operating these construction trains in a pit 30 feet in depth with a high wall on three sides and a grade on the fourth side. The work being carried on in the night, it was the duty of the company to make the operations reasonably safe by providing suitable lighting. This it attempted to do, as described; but can it be said that its duty stopped here? With its four or more engines operating constantly it is reasonable to assume that the lights would be affected and become dim and smoky, and it follows that their usefulness for the purpose for which they were installed would be impaired. The plaintiff testified that on the night of the accident it was stormy and dark, some of the lights were out, and others smoky. In view of the character of these operations, the trains being operated without any set schedules or rules governing them, it was the duty of the defendant to

keep the lights in such a condition as to make the operations of the trains reasonably safe. The rule that it is the duty of the master to furnish the servant a safe place to work is so well established and so universal that no citation of authorities need be given to support it. Testimony was introduced on the part of the defendant to show that the lights were bright and had been inspected. Whether or not the lights served their purpose, or whether the condition of the lights was the proximate cause of the accident, were questions of fact for the jury and were properly submitted to them by the trial court. *Kaukola* v. *Mining Co.*, 159 Mich. 689 (124 N. W. 591).

It being claimed that the injury to plaintiff resulted from the negligence of the defendant in not lighting the premises in such a manner that Cameron, the engineer, could have seen the other train in time to have stopped his engine and thus avoided the accident, it cannot be said, as a matter of law, that this was a risk incident to plaintiff's employment. In the case of *Milbourne* v. *Power Station Co.*, 140 Mich. 316, 324 (103 N. W. 821, 824, 70 L. R. A. 600), which in some particulars is a very similar case, Mr. Justice CARPENTER said:

"Neither do we think that the court can say, as a matter of law, that plaintiff assumed the risk which occasioned his injury. We cannot say that plaintiff assumed it unless we can say that the risk was incident to his employment, or that he knew or should have known that the loaded cars were on the spur. See *Bradburn* v. *Railroad Co.*, 134 Mich. 575 (96 N. W. 929). If his injury resulted from the negligence of his employer, the risk was not incident to plaintiff's employment. It does not avail defendant to say that plaintiff assumed the risk of the shock resulting from cars coming together on the siding 'with customary force.' For, from the evidence, it may be inferred that the shock of the collision was much greater than the shock ordinarily resulting from cars coming together on the siding. It certainly cannot be said that plain-

tiff knew that the loaded cars were on the siding. And if those in charge of the train were not bound to know that they were there—and we have held that they were not—neither was plaintiff bound to know it."

Whether it was customary to leave a train of empties to the west of switch A, at or in front of the railroad bridge, while empty trains were coming down track No. 1, was a matter in dispute. Cameron, the engineer, was not produced as a witness. If, as claimed by the plaintiff, it was not customary to leave cars at the place where the accident occurred, so as to give the men employed notice, Cameron had a right to assume that the track was clear, and it cannot be said that he would be guilty of contributory negligence, as a matter of law, if he operated his train with reasonable care in view of all the conditions. With reference thereto and the assumption of risk the court charged the jury as follows:

"Now, there is another matter here. The plaintiff cannot recover if the accident was the result of the negligence of his coemployees, who, for instance, would be Cameron, or would be Monkman. If the accident was the result of their negligence, then it was not the negligence of the company, naturally, and a person cannot recover in Michigan, if he can anywhere else, for personal injuries when those injuries are the result of the negligence of his coemployees— of his fellow-servants. So, if Monkman, by having his train there, was negligent, thereby causing the accident, plaintiff cannot recover.

"And, further, I charge you that Murphy is charged with knowledge of occurrences which, by reason of their frequency before the accident, any prudent man would expect to occur again. And if it was an ordinary or frequent occurrence that cars were left on track No. 1, westerly from the railroad bridge, Cameron, the engineer, with whom Murphy was riding, must have known, or had every reason to expect, it would occur again, and if, by reason of fog or failure of light, Cameron could not see whether any train was there, still he should have approached so care-

fully as not to have caused an accident, and is chargeable with the failure so to do. And if you find it was a frequent custom to leave cars on that track, and that any prudent, careful man would have known it, you should return a verdict for the defendant.

"There is another doctrine that might defeat the plaintiff's action, one which lawyers call the doctrine of assumption of risk. Now, this is a dangerous employment, and the plaintiff knew it when he went there to work. The defendant company did not insure their employees against accident. They do not agree that in every accident that occurs they will compensate them in damages or make it right for them. Murphy must have known this was a dangerous employment, and it was his duty to use prudence and care accordingly. Furthermore, if he knew that this work was being carried on in such a manner that an accident was liable to occur, it was his duty to quit, and if, knowing that, knowing and appreciating the risk that was involved in continuing to work there, if he continued on in his employment he is deemed to have assumed the risk, and the company is released from liability, and he cannot recover.

"There has been some contradictory testimony—to the best of my recollection it was testified to differently by different witnesses—in regard to mist or fog down there. Naturally the company would not be liable for mist or fog, if the mist or fog alone was the cause of the accident. They are not liable unless their negligence, the negligence of the company, as pointed out, together with mist or fog, was the proximate cause of the injury complained of in this case."

The case was properly submitted to the jury, and the judgment is therefore affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.