MEYERS *v.* DETROIT & CHARLEVOIX RAILROAD CO.

1. MASTER AND SERVANT—RAILROADS—BRAKEMEN—WIRES—SAFE PLACE—STATUTES.

A brakeman riding on top of a box car is not required at his peril to discover telephone wires stretched across a railroad siding at a height of less than 22 feet, contrary to the provisions of statute; 2 Comp. Laws, § 6354.

2. SAME—CONTRIBUTORY NEGLIGENCE.

And a special verdict determining in answer to a question that plaintiff could have seen the wires if he had looked for them was not conclusive of the negligence of the brakeman who testified that he did not know they were there.

3. SAME.

It was not negligent, as a matter of law, for plaintiff to ride on top of the freight car.

4. SAME—INSTRUCTIONS TO JURY.

No error was committed in charging the jury that it was plain-

tiff's duty if he had actual knowledge of the existence of the wire to protect himself, and that if on this occasion he knew or could in the exercise of ordinary care have discovered the wires, he was guilty of negligence; as the language considered with the remainder of the charge did not limit plaintiff's knowledge to the particular occasion, but permitted a finding that if he had or ought to have had previous knowledge, he was negligent.

5. SAME.

It was sufficient, in instructing the jury as to the burden of proof, to define "preponderance of evidence" and "burden of proof," to inform the jury that the burden was on plaintiff to prove the various elements of his case, as specified by the court, and to charge that plaintiff to recover must show negligence, freedom from contributory negligence, and an injury as alleged, accompanied by proper definitions of negligence and contributory negligence.

Error to Charlevoix; Mayne, J. Submitted October 13, 1910. (Docket No. 59.) Decided July 5, 1911.

Case by Warren M. Meyers against the Detroit & Charlevoix Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Clayton L. Bailey* (*Cooley & Hewitt*, of counsel), for appellant.

*Elisha N. Clink* (*Stephen H. Clink*, of counsel), for appellee.

OSTRANDER, C. J. Defendant operates a railroad through the village of Alba. At that place a sawmill and yard are maintained by Tindle & Jackson. Prior to December, 1907, defendant had constructed and maintained a spur track into this yard for the accommodation of Tindle & Jackson. This spur was known as siding No. 1. In December, 1907, defendant constructed a second spur from siding No. 1, which was known as siding No. 2. The siding last constructed passed near

the office of Tindle & Jackson.  At the time said siding was constructed, there was in existence a telephone line (two wires) which crossed both sidings and was attached to a pole nailed to one corner of the office building.  After siding No. 2 was completed, December 20, 1907, and when the first engine of defendant passed over it, it was found that the wire was so low as to catch upon the higher parts of the engine.  It was lifted over by defendant's employés, to permit the engine to pass in onto the siding, but, when the engine returned to the main track, it was found to have been cut or broken down, and the loose ends thrown away from the track.  The record does not disclose by whom the wires were cut.  It does appear, however, that they were replaced next day by an employé of the Swaverly Telephone Company.  Some time later they were broken again by some unknown agency, and they were again replaced by the same employé, but at a somewhat greater height.  At no time, however, were they placed as high as 22 feet above the established grade of the siding, as required by statute.  The wires remained in approximately the same position from December 20, 1907, to May 22, 1908, when plaintiff was injured.

Plaintiff had been employed by defendant for seven years as night watchman, brakeman, freight conductor, fireman and again as brakeman, baggageman, and expressman, which last-mentioned duties he was performing at the time of his injury, and for some months prior thereto.  During the five months preceding the accident some 200 cars had been placed upon one or other of the sidings, both of which passed under the wires, a great many of said cars being handled by the crew of which plaintiff was a member.  He testified that he was familiar with the tracks of both sidings, but said, however, that he could not recollect ever having been over siding No. 2 but once before the day of his injury and upon that occasion he was handling a flat car.  He further testified that he did not know that the wires were there.

On May 22, 1908, plaintiff, with his conductor, rode up-

on the engine in upon the siding No. 2, under the wires in question, and to the farther end of the siding, for the purpose of taking out a box car. When the engine reached the car, plaintiff went to the rear end of the car, turned the angle cock, climbed the ladder, and released the brake. He then went forward to the front end of the car where he could observe his conductor, who was between the engine and car, cutting in the air which operates the brake. Observing that his conductor was all right, he signaled to the engineer to proceed. He then remained standing upon the top of the car, but, instead of facing in the direction in which he was going, he turned his back to the engine for the purpose (he testifies) of looking at the track of the siding, which was somewhat out of repair. While in this position, he came in contact with the wires in question, which threw him down, and, as the car passed beneath him, dragged him to the rear end of the car and against the brake-staff with such violence as to break two of his ribs. He also claims that as a result of the injury a hernia of long standing was enlarged, and his sense of hearing was impaired.

The rules of defendant, with which plaintiff testified he was familiar, provide, in part, as follows:

"Rule 20. Extreme care must be taken by all employés riding on top of or on the side of freight cars in passing buildings and other obstructions. The cars running over the road are of different heights and size, some of them not allowing a man to stand on top or ride upon the side while passing by bridges, buildings, and other obstructions. All employés must carefully inform themselves on this point and take care to avoid injury to themselves for this cause.

"Rule 21. Cars running over this road are equipped with different kinds of ladders, some having the ladders on the end, others on the side, some having stirrups on the bottoms of the car bodies and others without. Trainmen and switchmen will examine ladders of all cars and note the situation and condition before making use of same. * * *

"Rule 22. At many stations on the road there are cat-

tle guards within station limits.   Trainmen and switch-
men working about yards or at such stations are required
to exercise great care to avoid injury in passing over such
cattle guards.

"Attention is also called to the necessity of equal care
in working about switches at stations and in yards to avoid
injury by having feet caught in frogs, switches, and guard
rails.

"Jumping on or off cars or engines in motion, entering
between cars in motion to couple or uncouple them, and
all similar imprudences are forbidden.

"Every employé is required to exercise the utmost
caution to avoid injury to himself or fellow employés
especially in coupling, switching, or other movements of
cars and trains.   *   *   *

"Rule 31.   An employé observing any obstructions or
damage to the road or bridges, or observing any circum-
stances that indicate danger in any way, will leave at
nearest telegraph station a written report of the same, and
will take such further steps as will insure safety.   All
such reports must be telegraphed by the agent or operator
to the general manager, and notice of the obstruction or
danger must be given to conductors of all trains, until or-
ders are received from the general manager to discontinue
such notice."

Two of plaintiff's witnesses, who saw the accident, one
from a point 200 feet distant, and the other from a point
from 100 to 125 feet distant, testified that the wires were
plainly visible from where they stood.   A witness for de-
fendant who stood aside to let the train pass at a point
125 or 150 feet away from the wires testified that, after
the train passed, he saw that plaintiff was in danger from
the wires, and that he tried, without success, to get his
attention by calling to him.

The following special questions were submitted to and
answered by the jury:

"Was the track cleared and the wires removed there-
from when the engine came out after the initial trip in on
the siding?

"*Answer.* Yes.

"When Meyers stood on the box car and gave the sig-

nal to go ahead, could he have seen those wires if he had looked?

"*Answer.* Yes.

"Was the plaintiff, Meyers, familiar with the rules of the company introduced in evidence?

"*Answer.* Yes."

These answers were accompanied by a general verdict for plaintiff. In the brief for appellant it is said:

"The defendant relies for reversal of the judgment principally upon the grounds that the plaintiff was guilty of contributory negligence as a matter of law; that the answers of the jury to the special questions are inconsistent with its general verdict; and that the court erred in its charge to the jury concerning the knowledge which plaintiff had at the time of his injury that the wires were there (assignment No. 16) and in its charge upon the burden of proof (assignment No. 17)."

The argument is limited to the matters stated. Whether the special verdict is controlling depends upon whether the fact that plaintiff could have seen the telephone wires, had he looked, conclusively establishes his want of due care. Plaintiff testified that he did not know the wires were there. If he did not, was he necessarily at fault because he did not look for them? If a failure to look for them is excused, the special and general verdict may stand together. It is natural for one to look for, and to avoid if necessary, those things which experience has shown may exist. In a particular case there may be a duty to know whether any peril, expected and usual, or unexpected and unusual, exists.

Speaking generally, and with respect to the particular and unlawful obstruction created by the wires, plaintiff's duty was not a duty to learn at his peril whether they were there. He owed a duty of reasonable observation of the surroundings in the light of experience. He was not required to anticipate that in stringing wires over the track the law would be violated. No wires strung at a lawful height would have imperiled him.

It is common knowledge, and if not it may become so by

experiment, that a single telephone wire carried at an elevation is not always easily visible to one who is actually looking for it.   Two of such wires stretched at some distance from each other, as is usual, are not always easily discernible.   One might or might not see them without considerable effort.   And if two persons from different points were looking for the same wire, one might discover it easily and the other with difficulty.   One may be generally observant, even diligently observant, of surroundings, without discovering telephone wires in the air, especially when their presence there is not expected.   Therefore we are not prepared to say that because plaintiff might have seen the wires had he looked for them, or might have seen them as he approached them, his negligence is conclusively established.

It is said that the position of plaintiff was a perilous one, deliberately assumed.   It was only perilous because there were two telephone wires stretched across the track at an unlawful height.   Plaintiff went upon the car in the discharge of his duty.   He could ride out of the siding upon the top of the car, upon its side, or, probably, he might have climbed to and upon the locomotive.   Of these courses open to him, it would seem that remaining upon the top of the car was the least dangerous, if the wires were not there, and, if he did not know about the wires, it would seem the least dangerous to him.   In brief, everything that plaintiff did appears prudent enough if we accept the fact that he did not know about, and had no good reason to apprehend, the presence of the wires. This cannot be said of the conduct considered by this court in *Benage* v. *Railway Co.*, 102 Mich. 72 (60 N. W. 286), and decision in that case and in *Glover* v. *Scotten*, 82 Mich. 369 (46 N. W. 936), turns upon the point that the position assumed by the plaintiff was inherently as well as comparatively dangerous, and that a comparatively safe place had been provided.   Nor do the facts bring the case within the rule applied in *Carr* v. *Railway Co.*, 152 Mich. 138 (115 N. W. 1068), a case like

many others in which the basis for decision was the duty of plaintiff to familiarize himself with the location of all permanent structures along a siding. Upon the whole record, the question of plaintiff's negligence appears to be one of fact, determined in plaintiff's favor by the general verdict.

It is assigned as error that the court in instructing the jury referred them with respect to plaintiff's knowledge to the particular occasion. The language used was:

"But, if the plaintiff had actual knowledge of the existence of this wire, then it was his duty to protect himself, and, if he did not do so, he was guilty of contributory negligence and cannot recover. So it will be necessary for you to decide whether on this occasion the plaintiff knew that the wire was there. Or, in other words, could he or would he, provided he was in the exercise of ordinary care on that occasion, have discovered it?"

The court first stated the respective claims and positions of the parties in a manner which counsel announced to be satisfactory. The language quoted, considered with the remainder of the charge, does not limit plaintiff's knowledge of the danger of the wires to this particular occasion, and does permit the jury to find that if he had previous knowledge, or, if he ought to have acquired the knowledge that they were there, he could not recover. In the immediately subsequent portion of the charge, the attention of the jury is directed to plaintiff's claim that he had never before been so far back on the siding and had never observed the wires, and did not observe them on the occasion of his injury. We cannot think the jury misapprehended the statement of the court.

Upon the subject of the burden of proof, it is said that the court failed to give equal emphasis to the different elements to be established by plaintiff. In various phrasing the court stated all that plaintiff must prove and the meaning of the terms "preponderance of evidence" and "burden of proof." He said the plaintiff in order to recover must show the negligence of the defendant, his free-

dom from negligence, and that he had sustained injury. He defined "negligence" and "contributory negligence," and said plaintiff must affirmatively show negligence of defendant and freedom from negligence on his part.

We are of opinion that reversible error is not made out, and that the judgment should be affirmed.

BIRD, BROOKE, BLAIR, and STONE, JJ., concurred.